104 So.2d 346 (1958)
STATE of Florida, ex rel. Richard W. ERVIN, as Attorney General of the State of Florida, Petitioner,
v.
Hoyt B. COTNEY, Chairman, Ben Zellner, D.W. Wilkinson, Fro Strickland, Kenneth LaRue, Mrs. J.I. Triplett, III, Dr. Luke Glennan, John H. Pace, Jr., S. Bryan Jennings, G.E. Wiggins, M.H. Dyson, AND Mrs. R.G. Jensen, individually and as constituting the Clay County Development Authority, Respondents.
Supreme Court of Florida.
June 27, 1958.
*347 Richard W. Ervin, Atty. Gen., and Charles T. Henderson, Asst. Atty. Gen., for petitioner.
Scruby & Yonge, Orange Park, and Patterson, Freeman, Richards & Watson, Jacksonville, for Respondents.
ROBERTS, Justice.
This is an original proceeding in quo warranto initiated by the Attorney General, challenging the validity of Chapter 57-1226, Special Acts of Florida, 1957, and the actions of the Clay County Development Authority, created by such Special Act, already or proposed to be taken thereunder.
Under the terms of the Special Act in question, the Clay County Development Authority was created "for the purpose of performing such acts as shall be necessary for the sound planning for, and development of Clay County" for the public good and welfare of the county, its incorporated municipalities, and its or their inhabitants. The Authority is granted power to lease or purchase real property, to construct improvements thereon, and to pay for same by the issuance of revenue certificates, or by using funds granted to it by the state or Clay County or its municipalities. Such improvement projects may include improvements "for development, expansion and promotion *348 of industry, commerce, agriculture, natural resources and vocational training and the construction of buildings and plants for the purpose of selling, leasing or renting such structures to private persons, firms, or corporations." The Authority does not have the power of eminent domain nor any taxing power, and it is expressly provided in the Special Act that the Authority "shall not be empowered or authorized in any manner to create a debt as against the state, the county of Clay or any of the incorporated cities therein."
The Attorney General has attacked the Act in question as "an invalid attempt by the Legislature to create and confer upon a public corporation the power to loan its credit to private interests and to acquire property which is to be developed for private interests" in contravention of § 10 of Article IX of the Florida Constitution F.S.A. which, among others, prohibits the enactment of legislation authorizing a county or city or other public body "to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual." He relies upon the decision of this court in Adams v. Housing Authority of City of Daytona Beach, Fla. 1952, 60 So.2d 663, in support of this contention. But the Act stricken down in the Adams case authorized the Housing Authority not only to purchase but also to condemn property through the power of eminent domain with the avowed purpose of selling the entire property so acquired to other private individuals or corporations for private use. It was held that the public purpose incidentally served by the statutory plan, that is, the abatement of slum or "blighted" areas, was not sufficient, standing alone, to convert into a public enterprise that which was essentially a plan for the establishment of private enterprises. The fact that the Housing Authority was authorized to condemn private property for such purpose was obviously given considerable weight by this court. It must, however, be taken as settled law under the Adams decision and the previous decision of this court in State v. Town of North Miami, Fla. 1952, 59 So.2d 779, that a public body cannot use its power and its funds to acquire property, either by purchase or by the exercise of the power of eminent domain, for the sole purpose of making such property available to private enterprises for private use.
It is equally clear from subsequent decisions of this court that, if a valid public purpose will be effectuated by a proposed plan of acquisition and/or improvement of property by a public body, the fact that a sale or lease of a portion of the improvement to private parties was contemplated will not invalidate the plan. In each of the following cases the proposed plan was approved as a valid public purpose, even though private enterprise was incidentally involved: Gate City Garage, Inc., v. City of Jacksonville, Fla. 1953, 66 So.2d 653 (construction and lease of filling station on municipal parking lot); State v. City of Miami, Fla. 1954, 76 So.2d 294 (an international trade market); State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9 (an inter-American cultural and trade center); State v. Dade County, Fla. 1953, 62 So.2d 404 (the erection and leasing of a warehouse and shop by the county to a private corporation); Panama City v. State, Fla. 1957, 93 So.2d 608 (acquiring land and erecting two marinas, including stores to be leased to private interests); State v. Daytona Beach Racing and Recreational Facilities District, Fla. 1956, 89 So.2d 34 (construction of racing and recreational facilities to be leased to private corporation for a portion of each year); State v. Board of Control, Fla. 1953, 66 So.2d 209 (construction of dormitories at university, to be used by social fraternities with option to purchase); Hanna v. Sunrise Recreation, Inc., Fla. 1957, 94 So.2d 597 (leasing a portion of a state park to private corporation for golf course and other amusement facilities).
The Special Act here in question is susceptible of the interpretation that the Authority is authorized to purchase (but *349 not to condemn) property solely for the purpose of development as an industrial or commercial area and the sale or lease thereof to private enterprises. But such an interpretation is not required by the Act; and nothing heretofore done by the Authority thereunder indicates that it will be so construed. So far, the Authority has purchased from the United States Government a large tract of surplus property in Clay County which, according to its brief, it proposes to utilize "as one project in the overall program of integrated development of Clay County". It is planned to construct an airport and a golf course on such property; and at least a portion of the remainder is to be sold or leased to private concerns as sites for industrial or commercial plants. Other contemplated projects of the Authority are (1) the acquisition of the use of a portion of Camp Blanding for the creation and development of camp and recreational and vocational training facilities for the use and benefit of such youth organizations as the Girl Scouts, Boy Scouts, 4-H Club and the Future Farmers of America; (2) assistance to the Doctor's Inlet Civic League in its development of recreational facilities for the people of Doctor's Inlet, Florida; (3) assistance to the Orange Park Community Center in acquiring and developing recreational facilities for the people of the Town of Orange Park, Florida.
We have no doubt that the Clay County Development Authority was created to and will serve a valid public purpose in providing for the over-all development of Clay County. The setting aside for industrial and commercial purposes of a portion of the property already purchased is certainly a part of the balanced over-all plan for the County's development; but there is nothing in the record here to show that this was the primary purpose for the acquisition of the federal government's surplus tract of land, rather than an incidental part thereof. In these circumstances we can find nothing in the previous decisions of this court construing § 10 of Article IX requiring us to hold that the Authority's acquisition of the property and proposed program for its development amounts to an appropriation of the Authority's funds for, or the lending of its credit to, a private enterprise.
Nor do we find Ch. 57-1226, supra, amenable to the attack here made upon it. It is our duty to resolve doubts as to constitutionality in favor of validity; and, if the Act admits of two interpretations, we should adopt that which leads to its constitutionality. Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320, 141 So. 604. While the legislative determination of a public purpose is not binding upon the courts, such a declaration is very persuasive; and "when taken in conjunction with the purpose sought to be accomplished [,] conditions as they actually exist, of which the Court will take judicial notice, or facts and conditions shown to exist by the pleadings and the facts contained in the record, the Courts may readily determine that the primary purpose, aim and objective of the plan is to serve a public and a municipal purpose." Gate City Garage, Inc., v. City of Jacksonville, supra, 66 So.2d 653, 656. When construed as authorizing the sale or lease for industrial and commercial purposes of a portion, only, of a tract of land acquired as a single project encompassing recognized public purposes as the primary object of the acquisition; or as authorizing the construction of improvements on such property for utilization by private enterprises as an incident to and in furtherance of a primary and recognized public purpose, cf. Gate City Garage, Inc., v. City of Jacksonville, supra, 66 So.2d 653; Panama City v. State, supra, 93 So.2d 608, we find no constitutional infirmities in the Act.
We hold, therefore, that except for that portion of Subsection (2) of § 9 of the Act permitting the Authority to acquire and hold and dispose of stock of other corporations, which the respondent concedes is contrary to § 10 of Article IX, the *350 Act here reviewed, when construed as above, is valid as against the attack here made upon it.
Accordingly, the writ heretofore issued should be and it is hereby quashed.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.