126 So.2d 313 (1961)
Abe STEIN and Alice N. Stein, his wife, Appellant,
v.
Fred W. DARBY and Jack Darby and Seaboard Air Line Railroad, a corporation, Appellees.
No. C-41.
District Court of Appeal of Florida. First District.
January 24, 1961.
*314 James H. Bunch and J. Quinton Rumph, Jacksonville, for appellants.
Botts, Mahoney, Whitehead, Ramsaur & Hadlow, Jacksonville, for appellees.
STURGIS, Acting Chief Judge.
This is the second appeal of this case. See Stein v. Darby, Fla.App., 114 So.2d 368, 372. As the facts of the case are fully set out in the opinion on the first appeal no useful purpose would be served to repeat them.
On that appeal this court reversed the trial court's order dismissing the plaintiff's complaint as to the defendants Darby, for reasons recited in the opinion. As to the defendant Seaboard, which we shall hereafter refer to as the Railroad, this court affirmed the lower court's order which dismissed the cause as to the Railroad, but remanded the cause with directions that plaintiffs be allowed ten days from date of the filing of this court's mandate within which to amend their complaint to allege that their property lies without the boundaries of any municipality, if they be so advised. This court further held that "upon the filing of such amendment, the cause shall proceed as provided by law," but "if no such amendment is filed by plaintiffs within the time (therein) limited, the order of dismissal with prejudice as to defendant Seaboard shall stand affirmed." Upon the mandate going down the plaintiffs amended to allege that their property lies without the boundaries of any municipality. The Railroad again moved to dismiss upon grounds hereinafter stated, and the trial court again sustained the motion and dismissed as to the Railroad, with prejudice, and upon grounds stated in the order. From this order, and an order denying a petition for rehearing by plaintiffs, the latter appealed to this court.
We are at the outset confronted with the proposition as to whether the action of this court in affirming the trial court's order dismissing the suit as to the defendant Railroad, but in remanding the cause with leave to plaintiffs to amend to allege that their property lies without a municipality, coupled with plaintiffs' last amendment to meet that particular objection raised on the first appeal, in effect foreclosed against the Railroad the question of the statement of a cause of action against it in the complaint as last amended. The answer depends upon a determination as to what was decided by the lower court in sustaining the Railroad's motion to dismiss before the first appeal, and of course, the effect of this court's decision on the first appeal as it relates to that question.
The complaint, before the last amendment made in pursuance of this court's mandate, sought a decree of the Circuit Court of Duval County which would grant plaintiffs a way of necessity across the Railroad's right of way to reach a certain public highway, under authority of F.S. Section 704.01(2), F.S.A., as well as certain *315 relief against the Darbys with which we are not concerned on this appeal. The Railroad moved to dismiss on the ground that the complaint failed to state a cause of action on which the relief prayed for could be granted against it. The lower court sustained the motion to dismiss without specifically stating any reasons therefor. It is to be presumed that the trial judge agreed with the Railroad that the complaint stated no cause of action against it. On the first appeal the Railroad argued here that the trial judge's order as to it should be sustained because of the failure of the complaint to allege that plaintiffs' property lies without the boundaries of any municipality. This court sustained the trial judge's order on that ground and remanded the cause with leave to supply this deficiency. After such amendment by plaintiffs the Railroad again moved to dismiss on the specific grounds (1) that the complaint as last amended fails to state a cause of action, (2) that the complaint seeks to take unlawfully the Railroad's private property, or an interest therein, for private use pursuant to F.S. Section 704.01(2), F.S.A., and (3) that said statute is unconstitutional in that it purports to authorize the taking of private property for private use. In support of the second and third grounds it is contended that the statute violates Section 1, Declaration of Rights, F.S.A., and Section 29, Article XVI, of the Florida Constitution, F.S.A. The trial judge sustained this motion on the ground that the application of the statute to the circumstances related in the complaint would constitute the exercise of a power in contravention of Sections 1 and 12 of the Florida Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States.
While the parties have not questioned jurisdiction of this court to entertain this appeal involving as respects the defendant Railroad a final decree of the trial court passing on the validity of a statute, it is well recognized that when in doubt the question of jurisdiction should be raised by the court.
Section 4(2), Article V, Constitution of Florida, provides that "Appeals from trial courts may be taken directly to the supreme court, as a matter of right, * * * from final judgments or decrees directly passing upon the validity of a state statute * * * or construing a controlling provision of the Florida or federal constitution * * *"; further, that "Appeals from district courts of appeal may be taken to the supreme court, as a matter of right, * * * from decisions initially passing upon the validity of a state statute * * * or initially construing a controlling provision of the Florida or federal constitution." The jurisdictional problem with which we are confronted has not been settled and in holding as we do that this court is vested with jurisdiction in the premises, we proceed on the theory that under the above-quoted provisions of the constitution there exists the right of appeal to the Supreme Court from the precedent of this decision initially passing on the validity of a statute. We recognize also that under the constitutional provisions governing jurisdiction of the several courts it may logically be determined that jurisdiction to review an order of the nature in question rests exclusively in the Supreme Court. The question does not appear thus far to have been presented to the Supreme Court for determination. In deference to whatever disposition may be made by the Supreme Court in disposing of this decision, which we have determined to certify to that court for consideration, we think it pertinent to acknowledge the apparent concept of the position of the Supreme Court under Article V of the state constitution as adopted in 1956, that is to say: that the great and overriding function of that body, aside from the original jurisdiction exercised by it, is to provide uniformity in the case law by resolving conflicts in decisions and passing ultimately upon the written law  statutes, constitutions, and treaties.
Reiterating a time-worn syllogism, the primary virtue of our form of jurisprudence is its adaptability to changing conditions, *316 its recognized responsibility and ready capacity to so knead the law as to reflect the development of a progressive and enlightened social order. In that process it is axiomatic that exceptions prove the rule and that bad precedents do not make good law. Applying these concepts to the statutory and constitutional provisions with which we are concerned on this appeal, we hold that Section 704.01(2), Florida Statutes, F.S.A., is clearly constitutional and that the second amended complaint, framed in accordance with the decision of this court on the prior appeal, is legally sufficient to state a cause of action against the defendant Railroad.
The order of dismissal resulting in the former appeal was triggered by the defendant Railroad's motion to dismiss the complaint on the sole ground that it "fails to state a cause of action against this defendant." The identical ground, and none other, is the predicate for the motion to dismiss resulting in the order now on review, which dismissed the complaint as to only the defendant Railroad on a finding that F.S. Section 704.01(2), F.S.A. would permit the exercise of a power in contravention of Sections 1 and 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment to the Constitution of the United States. Other defendants, whose motion to dismiss was denied, did not elect to appeal. Although not determinative of our conclusions, we deem it appropriate to note that although the sole point for determination on this appeal  the question of the constitutionality of the act in its application to the rights of the defendant Railroad  was relevant to the defendant Railroad's position before the trial court on the occasion of the entry of the first order appealed, and also before this court on the hearing of that appeal, the subject was not presented to this court in support of the order of dismissal formerly reviewed. Orderly procedure indicates that this should have been done. Failure to do so unquestionably left the door ajar for this appeal involving substantially the same question of law which might have been resolved on the first appeal and thereby subverts the objectives of Florida Appellate Rule 4.2, 31 F.S.A.
A careful analysis of the statute compels the conclusion that the result contemplated thereby serves a public purpose as distinguished from a public benefit; that it provides a lawful means by which to accomplish full utilization of the state's natural resources, their development in the ordinary channels of commerce and industry. Such is a major purpose of all forms of organized society.
In determining whether particular facts present a situation meeting the test of "public purpose" as distinguished from "public benefit", courts are inevitably close to the role of lawmakers. That role is less spectacular, however, when the legislature has provided an answer consistent with a proper rule of law, as is true of that part of F.S. §§ 704.01(2) and 704.04 F.S.A., with which we are concerned. The statutes provide:
F.S. § 704.01(2), F.S.A.:
"(2) Statutory way of necessity exclusive of common law right.  Based on public policy, convenience and necessity, a statutory way of necessity exclusive of any common law right exists when any land or portion thereof outside any municipality which is being used or desired to be used as a dwelling or for agricultural or for timber raising or cutting or stockraising purposes shall be shut off or hemmed in by lands, fencing or other improvements of other persons so that no practicable route of egress or ingress shall be available therefrom to the nearest practicable public or private road. * * *"
F.S. § 704.04, F.S.A.:
"Judicial remedy and compensation to servient owner.  When the owner or owners of such lands across which a statutory way of necessity under § 704.01(2) is claimed, exclusive of the common law right, objects or refuses *317 to permit the use of such way under the conditions set forth herein, or until he receives compensation therefor, then either party or the board of county commissioners of such county may file suit in the circuit court of the county wherein the land is located in order to determine if the claim for said easement exists, and the amount of compensation to which said party is entitled for use of such easement. Where said easement is awarded to the owner of the dominant tenement, it shall be temporary and exists so long as such easement is reasonably necessary for the purposes stated herein. The court, in its discretion, shall determine all questions including the type, extent and location of the easement and the amount of compensation, provided that if either of said parties so request in his original pleadings the amount of compensation may be determined by a jury trial. The easement shall date from the time the award is paid."
Chapter 704, F.S.A. is devoted entirely to the subject of ways of necessity. A casual reading produces the inescapable conclusion that the legislature was not only cognizant of the common law rule governing the subject, which it specifically preserved, but also set about to implement the common law rule with a statutory proceeding in eminent domain by which to attain the desired public purpose in those situations where a common law way of necessity is not available.
The common law implication of the way of necessity contemplated a common source of title between the dominant and servient tenements and is predicated on the theory that when one deeds to another a parcel of land which is cut off by other lands of the grantor or by lands of strangers from all access to public thoroughfares, the grantee is entitled to an easement of ingress and egress over the lands retained by his grantor.[1] The way is said to arise from the presumed intention of the parties. The theory of the common law easement of a way of necessity appears to emanate from the rule that he who grants a thing to someone else is understood to grant that without which the thing could not be or exist.[2] The rule was later applied to reservations by the grantor on the presumption that if he reserved something in making a grant, he also reserved access to that thing.[3] The doctrine was gradually extended to include a way to lands retained by the grantor which he did not mention in his grant, and this concept culminated with the decision in Packer v. Welsted[4] where it was said that it was not only a private inconvenience but also to the prejudice of the public weal that land should lie fresh and unoccupied. This was apparently the first time that public policy was mentioned as a ground for allowing the way of necessity.
It was not until 1680, however, that the manner in which the easement arose was given any special consideration. It was then discussed by Serjeant Williams in a note to Pomfret v. Ricroft,[5] rather than by a judge. Williams said it was wrong to plead the way of necessity in general terms without specifying the manner in which the servient tenement became charged with the burden, and explained that the way by necessity had its origin in a grant implied "by operation of law * * * as an incident to the grant," thus indicating that this incident to the grant was thrust by law upon the parties regardless of their intention.
It was in reliance upon the note of Serjeant Williams that in 1815 Lord Ellenborough held that a general way of necessity *318 does not exist, but that unity of possession must be properly pleaded and proved.[6] Thus there developed the common law rule that if the claimant cannot trace back to the unity of ownership of the servient and dominant tenements, he cannot establish an easement by necessity. Collins v. Prentice, 1842, 15 Conn. 39; Nichols v. Luce, 1834, 24 Pick., Mass., 102. In Collins it is pointed out that although it is called a way of necessity, the necessity does not create the way but only furnishes evidence of the real intention of the parties; and in the Nichols case it is said that the deed of the grantor as much creates the way of necessity as it does the way by grant, the only difference between the two being that one is granted in express words and the other only by implication.
Considerations of public policy fully justify provision by the legislature of a means of access to landlocked property in conformity with other legal precepts. Careful study of the case law indicates that recognition of this proposition has doubtless been impeded because, in the development of the doctrine of ways by necessity at common law, equitable principles dictated that no compensation should be allowed to the owner of the servient tenement. The statute with which we are concerned walks the added mile by providing compensation and due process to the servient tenement.
In the development of the common law rule the absence of the concept of compensation to the servient tenement resulted in the need for some criterion by which to determine which of the lands adjoining the landlocked parcel should become servient, should have the burden of the way. The creation of the way of necessity as an incident to a grant afforded a ready solution to the minds of the 19th century judges who liked to think of all legal transactions in terms of contract; consequently the authorities took the next step by turning the theory of a way of necessity created as an "incident to a grant" into a theory that the easement resulted from "an implied term of a grant", and on the latter premise began to say that it arose from the presumed intent of the parties. Collins v. Prentice, supra. Review of that case reflects that the fervor to fit the creation of the way by necessity into a contractual pattern dominated to the extent that it was spoken of as if creation of the way of necessity was within the actual intent of the parties and was therefore a term of the contract of conveyance, implied-in-fact or truly contractual, though not express. While this seems yet to be the approach of some courts when dealing with common law ways of necessity, their reasoning is often obscure and ambiguous. See Orpin v. Morrison, 1918, 230 Mass. 529, 533, 120 N.E. 183, 184, in which the pure presumption of a way of necessity raised by law is treated as having been created by an implied contract.
Throughout the development of the concepts of implied contract and presumptions of law creating ways of necessity, the interesting implication is inescapable that the courts have leaned strongly toward equitable considerations having to do with the situation of the landlocked owner and have sought to relieve him by processes avoiding payment of compensation for the easement. Due to the normal course of events in the devolution of property, the landlocked owner is usually able to trace title to a common source, and so the ancient common law approach was in most instances effectual. In enacting Chapter 704, F.S.A., however, the legislature recognized that the common law rule failed to meet the exigency in all cases and provided relief for those instances where it could not apply. Note that the first paragraph of F.S. § 704.01, F.S.A. in clear and concise terms recognizes "the common law rule of an implied grant of a way of necessity," and that the remainder of the chapter deals with situations not falling within that concept.
*319 It has been aptly said that the foundation of the rule regarding ways of necessity is a fiction of law, by which a grant or reservation is implied in order, on grounds of public policy, to meet a special emergency, to the end that no land may be left inaccessible for the purpose of cultivation.[7] Stripped of legal legerdemain, it seems clear that in final analysis the common law doctrine is based entirely upon public policy, which is favorable to full utilization of the natural resources and against the possible loss of utility in the case of landlocked property.[8] We find no difficulty in burrowing down under the devious routes that have been followed to accomplish the end and coming to grips with the problem in its practical as well as modern legal aspects. It is recognized, of course, that in applying the statute the individual owning the dominant tenement will in most instances derive a greater benefit proportionately than a remote member of the body politic. The legislature took that into account by requiring the owner of the dominant tenement to pay full compensation to the owner of the servient tenement as a condition precedent to the granting of the statutory was of necessity. F.S. § 704.04, F.S.A. The attributes of "public purpose" are not dissolved simply because benefits or burdens fall unequally upon members of society. Independent research indicates that while the various state and federal courts have as yet refused to award compensation without statutory sanction  such as provided for by Chapter 704, F.S.A.  none have refused to enforce the right to a way of necessity where compensation is provided for by statute.[9]
While we find no Florida precedent directly in point, the constitutionality of the subject statute has inferentially been recognized in Bradshaw v. Prasek, Fla.App., 114 So.2d 821, affirming the denial of a summary judgment, in which the court quoted § 704.01(2), Florida Statutes, F.S.A., with approval. In Hewitt v. Menees, Fla., 100 So.2d 161, the Florida Supreme Court clearly relied on the statute to reach its conclusion. It is evident that Chapter 704, Florida Statutes, F.S.A., as now in effect is the product of amendments that were designed to remove and did remove the legal impediments causing a former act to be held unconstitutional in South Dade Farms, Inc. v. B. & L. Farms Co., Fla., 62 So.2d 350. The controlling point in that decision was that application of the prior statute, which contained no provision for compensation, constituted a deprivation of private property without due process of law. The present statute effectively cures the defects of the prior statute, and this is the first case re-examining the constitutional question in the light of the amendment providing for compensation to the servient tenement.
We are not unmindful of the line of decisions of our Supreme Court, commencing with State v. Town of North Miami Beach, Fla., 59 So.2d 779, and concluding with Grubstein v. Urban Renewal Agency of City of Tampa, Fla., 115 So.2d 745, the initial trend of which was to hold unconstitutional *320 acts purporting to vest the power of condemnation under the Urban Renewal Law. That phase of Florida precedents is heavily relied upon by appellee Railroad. In Grubstein, however, the Supreme Court reconsidered its decision in Adams v. Housing Authority of Daytona Beach, 60 So.2d 663  one of the earlier cases  and sustained the constitutionality of the Urban Renewal Law there under attack, holding that it served a public purpose. In a concurring opinion Mr. Justice Thornal cogently stated that the scope of the court's holding should be broadened by unequivocally receding from the judgment in the Adams case to the extent that it was determined that the act there in question (Chapter 23077, Acts of 1945) was unconstitutional in its entirety, and cited State v. Board of Control, Fla. 1953, 66 So.2d 209, in which the Supreme Court of Florida held that an incidental private benefit is not determinative of the validity of a proposal if the ultimate basic objective is a public use. Mr. Justice Thornal, with extensive citations, also pointed out that the Adams decision has been subjected to severe criticism in law reviews and decisions of numerous courts of sister states.
As examples of "public use" it has been held: that the Board of Control may issue revenue certificates for the purpose of building "dormitories" in the nature of fraternity houses to be immediately leased to fraternities for living accommodations for their members at the University of Florida (State v. Board of Control, Fla. 1953, supra); that a publicly-owned fishing pier may be leased to a private enterprise for development by private capital (Sunny Isles Fishing Pier v. Dade County, Fla. 1955, 79 So.2d 667); that a public agency can issue revenue certificates to provide money with which to construct a trade center that would be leased to concessionaires and others as part of a program to encourage international trade (State v. Inter American Center Authority, Fla. 1955, 84 So.2d 9); that a public recreation district could issue bonds and construct a speedway which would be leased to a private enterprise for six months out of each year during a period of 40 years (State v. Daytona Beach Racing and Recreational Facilities District, Fla. 1956, 89 So.2d 34); that a city might issue revenue bonds to construct an extensive waterfront development notwithstanding its purpose to lease part of the project to private enterprise for private profit (Panama City v. State, Fla. 1957, 93 So.2d 608); that the Florida Board of Parks and Historic Memorials could lease substantial areas in a public park to a private enterprise for the conduct of an 18-hole golf course, restaurant, swimming pool and related activities (Hanna v. Sunrise Recreation, Fla. 1957, 94 So.2d 597); that the Clay County Development Authority, operating pursuant to a special law, could acquire land for low-cost housing and ultimately accomplish the construction of the buildings through agreements with private interests (State ex rel. Ervin v. Cotney, Fla. 1958, 104 So.2d 346). Underlying each of these decisions is the proposition that if the private benefit is simply incidental to the accomplishment of the public use, it will not be recognized as a reason to prevent accomplishment of the latter. In view of these decisions, we find no logic in the argument that the statute in question, which aids to render the earth  from which all sustenance flows  available to the uses of man, is unconstitutional as serving something other than a public purpose.
There is nothing in the Constitution of the United States prohibiting the state legislature from enacting statutes of the type under consideration, and there is nothing in the Florida Constitution restricting the legislature in that particular. It is elemental that all powers not specifically and exclusively delegated to the federal government or prohibited to the state are reserved to the people and may be exercised by their representatives in the legislature. No specific constitutional pronouncement is necessary to support the authority of the legislature to enact the act *321 in question, and finding no constitutional prohibition against its enactment, it follows that it is the product of valid power vested in the legislature. Moreover, Article XVI, Section 29,[10] of the Florida Constitution clearly implies that an "individual" may under authority of the legislature exercise the power of eminent domain for the purpose of acquiring a way of necessity to his landlocked property, conditioned on paying "full compensation" therefor to the owner.
Aside from the clear legislative power to enact the statute with which we are buttressed, and aside from the rules applicable to passing upon the constitutionality of acts of the legislature, we in any event do not hesitate to abandon the fictional trappings of "presumed intentions" and base our conclusion frankly upon the policy grounds which have in reality long supported the common law doctrine governing the way by necessity. In the case on review we have not yet reached  perhaps we never will  any consideration of whether plaintiff-appellant establishes a right to the relief sought, or the manner of the exercise by the trial court of whatever discretion may be vested in it in the light of such evidence as may be adduced on the question of the location and characteristics of the statutory way of necessity plaintiff alleges he is entitled to acquire under the statute. It is assumed that the trial court will properly apply the law to the facts.
In the recent case of Florida Power Corporation v. McNeely et ux., Fla.App., 125 So.2d 311, Kanner, J., speaking for the court, comprehensively defines easements incident to land as compared to title in land. It was there held that the Power Corporation had not acquired an easement to certain property, as sought to be established by suit in equity, and that a condemnation hearing could not be conducted as an incident to the main proceeding in equity, so that an independent action in condemnation was required. See, also, Florida State Turnpike Authority v. Anhoco Corp., Fla.App. 1958, 107 So.2d 51.
F.S. Chapter 704, F.S.A. contemplates that a proceeding in eminent domain may be maintained for condemnation of an easement of necessity. As an incident to such proceedings the trial court unquestionably has the power, before submitting the cause to a jury for the purpose of awarding compensation, to require the production of such evidence as will enable it to determine whether the right of condemnation exists under the particular circumstances, and if so, the extent, location and other incidents of the easement essential to the function of the jury, or to the court where no jury is requested, in making the award of compensation.
For the reasons stated, the order sustaining the Railroad's motion to dismiss the complaint as amended in accordance with the prior decision of this court is vacated and this cause is remanded for further proceedings consistent herewith.
Reversed and remanded.
CARROLL, DONALD, J., concurs.
MASON, ERNEST E., Associate Judge, dissents.
MASON, ERNEST E., Associate Judge (dissenting).
It is my view that we do not have jurisdiction of this appeal inasmuch as it is an *322 appeal from an order of the trial court which is in effect a final judgment or decree directly passing upon the validity of a state statute, and therefore, jurisdiction to review the same rests exclusively in the Supreme Court. For that reason, and for the further reason that the question involved on the merits is of great public interest, I join with the majority in certifying the decision herein to the Supreme Court.
Assuming that this Court has jurisdiction of this appeal, I cannot agree with the majority opinion that this Court's action on the first appeal foreclosed the defendant Railroad from raising on this appeal the question of the constitutionality of the statute in question, nor with its view that the statute is constitutional as applied to the circumstances disclosed by the record herein. Therefore, I must dissent from the majority opinion, and I would affirm the orders of the trial court now appealed.
It is further my view that the trial judge in sustaining the Railroad's motion to dismiss the complaint in the first instance did not do so upon constitutional grounds but that he sustained it upon another ground, viz.: the failure of the complaint to state a cause of action for lack of allegation that plaintiffs' property lies outside a municipality, the latter being a necessary allegation to state a cause of action under the section of the statute relied upon by the plaintiffs. The Railroad was not therefore foreclosed from raising the constitutionality of the statute in its last motion to dismiss. In this jurisdiction it is the duty of a Court not to pass upon the validity of a statute if the case can be properly decided on other grounds. See Fla.Jur., Const. Law, Sec. 52, and cases therein cited. "Where the contrary is not made evident we must assume that the trial court observed this rule." State v. Bruno, Fla., 104 So.2d 588, 590. This leads to the inevitable conclusion that we cannot and must not assume that the trial judge in order to reach his decision to dismiss the original complaint, or this Court in affirming his action on the first appeal, directly passed on the validity of F.S.A. Section 704.01(2), F.S.A., as applicable to the circumstances of this case.
We are, therefore, confronted here squarely with the question as to whether the Legislature may, in the exercise either of the power of eminent domain or in the exercise of the police power of the state, or both, authorize a private party to take, by judicial process prescribed in the legislative enactment, a private right-of-way or way of necessity over the private property of another. In this case appellants, plaintiffs below, filed this suit against the Darbys and the Railroad under the authority of F.S. Section 704.01(2), F.S.A. to secure ingress and egress to their land which they allege is hemmed in and shut off by the alleged closing of a public road by the Darbys, and by the right-of-way of the Railroad. On this appeal we are not concerned with plaintiffs' cause of action, if any, against the Darbys, but only with theirs, if any, against the Railroad. As a basis for the operation of the statute the complaint alleges that the Railroad has refused and denied the plaintiffs a road of ingress and egress to and from plaintiffs' land to a public highway running parallel with and across the Railroad right-of-way from plaintiffs' land. They seek a decree of the Circuit Court ordering the Railroad to grant them the right-of-way, and offer to compensate the Railroad as they may be directed by the Court. They claim to have this right and remedy by virtue of the provisions of F.S. Section 704.01(2), 704.04, F.S.A. The Railroad contends that the statute is violative of constitutional provisions referred to in the trial court's order dismissing the suit as to the defendant Railroad. The assignment of error raises the question as to the constitutionality of the statute as applied to the defendant Railroad in this case.
The statute (Sec. 704.01(2)) provides that based on public policy, convenience and necessity, a statutory way of necessity *323 (exclusive of any common law right) exists when any land outside of any municipality which is used for agricultural or for timber raising or cutting or stockraising purposes is shut off or hemmed in by lands, fencing or other improvements of other persons, so that no practicable route of egress or ingress shall be available therefrom to the nearest practicable public or private road. By amendment in 1953 the Legislature provided a method for appropriation by the county or owner of the dominant tenement through judicial process of such a way of necessity upon the payment of compensation to the owner of the servient tenement, Sec. 704.04. It is under authority of this statute that this suit is brought by appellants against the Railroad.
The question we must decide is whether the appellants are entitled by virtue of this statute to an easement over the Railroad's right-of-way for purposes of ingress and egress after payment of whatever compensation the trial court awards as just compensation. The Railroad says that the statute insofar as it authorizes such appropriation of its private property for such private purpose is void and unconstitutional. Appellants contend that the statute is valid and is consistent with Section 29, Article 16, of the Florida Constitution, which provides that "no private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money * * *," and that inasmuch as they are seeking only an easement over the Railroad's property, and are willing to pay just compensation to be fixed by the Court, they are not seeking to take the Railroad's property, and that, therefore, neither Sections 1 or 12 of the Florida Declaration of Rights, nor the Fourteenth Amendment to the Federal Constitution is applicable. They reason, therefore, that the State may, in the exercise of its police power, require the Railroad to grant the easement to them.
The Florida Declaration of Rights (Section 1) secures to all persons the right to acquire, possess and protect property, and provides (Section 12) that they shall not be deprived of their property without due process of law. The Fourteenth Amendment to the United States Constitution also declares that no person shall be deprived of his property by the State without due process of law. Of course, private corporations are persons within the meaning of these clauses. 6 Fla.Jur., Const. Law, Section 316. But appellants say here that they are not seeking to take any land from the Railroad for a way of necessity; they merely want the right to ingress and egress from their land across the railroad right-of-way to the highway. I think this reasoning is unsound. The right of ingress and egress is an easement and as such constitutes a property right. It is a burden on the right of the servient tenement to deal with its property as it sees fit. "The term `property' within the meaning of the constitutional guaranties embraces all valuable interests which a man may possess outside himself. It is more than the mere thing which a person owns; it includes the right to acquire, use, and dispose of it. It includes easements, riparian rights, a millrace with water from millpond * * *" 6 Fla.Jr., Sec. 227, and cases cited therein. The way of necessity sought by appellees is a valuable property right owned by the Railroad, and if they are to get it through the exercise of governmental action they may do so only through a valid exercise of either the State's police power or right of eminent domain, or both.
That the appellees may not secure the easement through the exercise of the State's police power as would be authorized by F.S. Section 704.01(2), F.S.A. has been decided by the Supreme Court of Florida in South Dade Farms v. B. & L. Farms Co., Fla., 62 So.2d 350, 351. There the Supreme Court held an injunction decree rendered by the chancellor under authority of this statute, which had the effect of *324 granting to one private owner an easement over the land of another private owner, to be void. The Court said:
"Of course, in this instance the taking would have no semblance even of basis in the police power. It is purely a matter of taking from one private owner for the use of another private owner.
"When the state attempted, by the statute, to accomplish what would result were the present order enforced, its act constituted a violation of the provision (contained in the Fourteenth Amendment) that no state shall `deprive any person of property without due process of law * * *' Also the Florida constitutional provisions found in the Declaration of Rights that a person shall not `be deprived of * * property without due process of law * * *' would be violated, not to mention the provision that private property shall not be `taken without just compensation'."
I do not believe that the easement may be secured through the exercise of the State's police power, for the police power may be used to take property only to promote or preserve the health, morals, safety or convenience of the community, not for a private purpose.
May it be secured through the exercise of the power of eminent domain as would seem to be authorized by the amendment to Chapter 704, passed by the Legislature in 1953, subsequent to the decision in South Dade Farms, Inc.? I think not.
The 1953 amendment, in effect, provides a method of taking through judicial process coupled with the payment of such compensation as may be awarded by the Court. Appellees argue that such a statute as this is supported by Section 29, Article 16, which they say contemplates the taking of an easement for private purposes so long as compensation is paid. They concede that if the right sought to be taken is property they are prohibited by the due process clauses of the Florida and United States Constitutions, where the taking is for a private purpose, even though compensation is paid. Inasmuch as the right sought to be taken is property, the prop is knocked from under this argument.
We should be reluctant to strike down an act of the Legislature, a coordinate branch of the state government, but I am convinced that the application of the statute to the circumstances here would constitute exercise of legislative power for the benefit of a private individual in contravention of the constitutional guaranties above quoted. It is not within the power of the State to authorize by statute the taking of the property of an individual without his consent, for the private use of another. Such a taking violates not only the due process clauses but also Section 29, Article 16, of the Constitution. This principle, if ever subject to question in this state, has been re-affirmed by the Supreme Court in the Urban Renewal Cases. Adams v. Housing Authority of City of Daytona Beach, Fla., 60 So.2d 663; Grubstein v. Urban Renewal Agency of City of Tampa, Fla., 115 So.2d 745. To like effect is State v. Town of North Miami, Fla., 59 So.2d 779, 785, where the Supreme Court, speaking through Mr. Justice Mathews, stated:
"Our government was founded upon the firm foundation that private property cannot be taken except when it will serve a public purpose."
Also, Osceola County v. Triple E. Development Company, Fla., 90 So.2d 600, 603, where Mr. Justice Terrell in an opinion for that Court which denied the authority of the County to exercise the power of eminent domain to condemn a right-of-way over an owner's land to reach private lakes owned by such person, declared:

*325 "* * * government in this country rests on the premise that private property can be condemned only when it will serve a public purpose."
I, therefore, believe that the appellees have no right through the exercise of either the police power or power of eminent domain, to acquire the claimed way of necessity over the Railroad's property without its consent, and that insofar as F.S. Sec. 704.01(2), 704.04, F.S.A. attempts to authorize such action it is to that extent unconstitutional and void.
NOTES
[1] Trost v. Tompkins, D.C.Mun.App. 1945, 44 A.2d 226, 231-232.
[2] Simonton, Ways by Necessity (1925) 25 Col.L.Rev. 571, 572, citing Fitzherbert, Grants 41, says this doctrine can be traced to the time of Edward I.
[3] Liford's Case, 11 Co.Rep. 46b, 77 Eng. Rep.R. 1206 (K.B. 1615).
[4] 2 Sid. 39, 111, 82 Eng.Rep.R. 1244, 1284 (K.B. 1658).
[5] I Wms.Saund. 321, 323 n. 6, 85 Eng.Rep. R. 454, 460-461 n. 6 (K.B. 1680).
[6] Bullard v. Harrison, 4 M. & S. 387, 105 Eng.Rep.R. 877 (K.B. 1815).
[7] Howley v. Chaffee, 1914, 88 Vt. 468, 473, 93 A. 120, 122, L.R.A. 1915D 1010; Buss v. Dyer, 1878, 125 Mass. 287, 291.
[8] Condry v. Laurie, 1945, 184 Md. 317, 41 A.2d 66.
[9] See for example:

Ariz.Code Ann. (1939) § 27-904, A.R.S. §§ 12-1201 to 12-1203; Ga. Code Ann. (1935) tit. 83 §§ 101-105, tit. 85 § 1401; Mich. Stat. Ann. (Henderson, 1935) § 9.281 et seq., Comp.Laws 1948, § 229.1 et seq., Mo.Stat.Ann. (1942) §§ 8488-89, Sections 228.340, 228.350 RSMo 1949, V.A.M.S.; Pa. Stat. Ann. (Purdon, 1942) tit. 36 § 2731 et seq.
A number of western states have statutes providing for eminent domain for "public uses" and list as one of such public uses "Byroads leading from highways to residences and farms." See Cal. Code Civ.Proc. § 1238; Idaho Code Ann. (1932) § 13-701, I.C. § 7-701; Mont.Rev. Codes Ann. (Anderson & McFarland, 1935) § 9934, R.C.M. 1947, § 93-9902; Nev.Comp.Laws (Hillyer, 1929) § 9153, N.R.S. 37.010; Utah Code Ann. (1943) tit. 104-61-1.
[10] Article XVI, § 29, Florida Constitution:

"Condemnation of property; compensation.  No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money; which compensation, irrespective of any benefit from any improvement proposed by such corporation or individual, shall be ascertained by a jury of twelve men in a court of competent jurisdiction, as shall be prescribed by law."