MAGER, Judge.
George Willaims, appellant, was the inter-venor below in a suit instituted by John W. Turrentine against the City of West Palm Beach and West Palm Beach Marina, Inc., defendants below. Plaintiff Turrentine sought a declaratory judgment that the lease of certain city property to a private corporation was invalid. Williams moved to intervene as an additional plaintiff in the declaratory action which motion was granted. The trial court subsequently entered a summary judgment against Turrentine and in favor of the city declaring that the city was authorized by law to enter into the lease in question. In entering the order the trial court granted intervenor additional time to file affidavits and argument in support of his contentions that the lease was invalid.
The court ultimately entered a final judgment for the city in all respects, holding, in effect, that the lease and the ordinances relating thereto were valid.
Although the intervenor seeks reversal on various grounds the only contention which we feel has merit is the assertion that the 99-year lease executed by the city violates the state Constitution.[1]
The final judgments, the briefs of the parties and other documentary matter in the record suggest a lease was executed between the city and a private corporation involving some 10 acres of land, the apparent proposed purpose of such lease being to permit high-rise construction and multi-family dwellings. The city does not dispute the fact that this was the intended purpose for such lease. The trial court’s order contains . the following additional facts :
“ . . . The property in question presently consists of a marina, gasoline service station, restaurant and metered parking lot, all owned or used by the city in a proprietary, rather than governmental, capacity. The city operates the marina and rents out boat space , to the public in all material respects as a private marina. The gasoline service station is leased and operated by an oil company. The restaurant is leased and operated by a private individual. The city operates the metered parking lot. None of the property is being used or devoted to the carrying on of ordinary city business.
*83 The only meritorious question for our consideration is the authority of the city to lease public lands to a private corporation; in particular, whether such lease is valid in light of applicable constitutional and charter provisions.
The city takes the position that the power to lease the property is specifically authorized under the provisions of its charter, specifically Section 1.03(4) which provides as follows:
“(4) The power to dispose of property shall embrace sale, exchange, lease, mortgage, pledge, or other encumbrance of any property, and also destruction, abandonment, or gift to charity of any property officially determined to be of no further use to the city and on nominal sale value or no value; provided, each sale of exchange of real property owned by the city other than delivery of a right of way deed or of a quitclaim deed or similar instrument for the purpose of removing a defect in or cloud on a title, and each lease of real property by the city as lessor for a period exceeding five years shall require approval by unanimous vote of the membership of the city commission or subsequent approval by vote of the city electors in a referendum election called and held as provided hereby.”
The provision of the Florida Constitution by which such charter authorization must be measured is found in Section 10, Article VII, F.S.A., which provides in part:
“§ 10. Pledging credit. — Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; . . . ”
The Supreme Court of Florida has, on many occasions, considered, interpreted and applied the substance of the foregoing constitutional provision. A listing of some of the pertinent decisions is as follows: City of Daytona Beach v. Dygert, 1941, 146 Fla.352, 1 So.2d 170; Bailey v. City of Tampa, 1926, 92 Fla. 1030, 111 So. 119; State v. Town of North Miami, Fla.1952, 59 So.2d 779; Gate City Garage v. City of Jacksonville, Fla.1953, 66 So.2d 653; Adams v. Housing Authority of City of Daytona Beach, Fla.1952, 60 So.2d 663; City of Clearwater v. Caldwell, Fla.1954, 75 So.2d 765; City of West Palm Beach v. State, Fla.1959, 113 So.2d 374; Raney v. City of Lakeland, Fla.1956, 88 So.2d 148; Panama City v. State, Fla.1957, 93 So.2d 608; State ex rel. Ervin v. Cotney, Fla. 1958, 104 So.2d 346; Panama City v. Seven Seas Restaurant, Inc., Fla.App.1965, 180 So.2d 190; State v. Clay County Development Authority, Fla.1962, 140 So.2d 576; State v. Jacksonville Port Authority, Fla.1967, 204 So.2d 881; State v. County of Dade, Fla.1968, 210 So.2d 200; State v. Ocean Highway and Port Authority, Fla.1968, 217 So.2d 103; and Bannon v. Port of Palm Beach District, Fla.1971, 246 So.2d 737.
The court has consistently held that unless the exercise of a municipal power is primarily for a public or municipal purpose, a municipality’s private commercial venture for profit is invalid. Bailey v. City of Tampa, supra; City of Clearwater v. Caldwell, supra; City of West Palm Beach v. State, supra; State v. Town of North Miami, supra.
In Adams v. Housing Authority of City of Daytona Beach, supra, the Supreme Court observed that:
“Incidental benefits accruing to the public from the establishment of some private enterprise is not sufficient to make the establishment of such enterprise a public purpose . . . ” 60 So.2d 669. (Emphasis added.)
See also Grubstein v. Urban Renewal Agency of City of Tampa, Fla.1959, 115 So.2d 745.
The court, however, has been careful to point out that if the paramount purpose of the governmental undertaking is a *84 public purpose “such project may as an incident thereto lawfully benefit private corporations or individuals”. State v. Jacksonville Port Authority, supra; Gate City Garage v. City of Jacksonville, supra; State ex rel. Ervin v. Cotney, supra; Panama City v. State, supra; State v. Clay County Development Authority, supra. In particular, the decision in State ex rel. Ervin v. Cotney, supra, sets forth numerous examples where proposals had as their primary undertaking a public purpose but where private enterprise was also incidentally involved.
In the case sub judice as far as we are able to evaluate the facts, the primary purpose of the lease in question is to permit high-rise construction and multi-family dwellings; the private interests to be served are more than incidental.
The facts in City of Clearwater v. Caldwell, supra, bear a marked similarity to those in the case sub judice. There the City of Clearwater attempted to lease a portion of land to a private individual for a period of fifty years; land which had previously been acquired by the city for municipal purposes. The city sought to lease the property to the private individual for hotel purposes; the city contending that it had the power to lease its lands for hotel and apartment purposes for private gain because it would serve a municipal purpose. The city did not have any express legislative authorization to lease its property for such purposes. In declaring such lease to be void the Supreme Court of Florida observed, 75 So.2d at p. 766:
“ . . . It may be argued that it is desirable for the City of Clearwater to be granted the power by the Legislature to enter into the real estate business and lease its property for hotels, drug stores, department stores, grocery stores, clothing stores, shoe stores and other such enterprises, but the Legislature has not attempted any such delegation of power. Such a change in policy may well threaten the entire free enterprise system. If such a change in policy can be brought about in this case, with reference to hotels, by judicial decree or opinion, why not extend the policy to all private business.
* * * * * *
“It would be a revolutionary change in municipal government for the Legislature to attempt to delegate any such power. Such a question is one of tremendous public importance and involves a change in policy. The Courts have no authority to change the policy with reference to municipal government as it has existed heretofore and adopt any such revolutionary policy. Such a change in policy can only be brought about by legislative action in some cases or by action of the people in approving such change by the adoption of a constitutional amendment, in others. . . . ” (Emphasis added.)
Although it might be suggested that the decision in the Caldwell case is distinguishable from the case sub judice because, here, the City of West Palm Beach had specific charter authority to lease, such an assertion lacks merit for the reason that any legislative authorization whether by statute or charter must be measured by the constitutional limitations. In this regard the Supreme Court pointed out in State v. Town of North Miami, supra, 59 So.2d at pp. 784-785:
“ . . .In none of the cases decided by this Court since the adoption of our present Constitution have we approved any special legislative acts which authorized any of the political subdivisions or governmental units of the State to acquire property and erect buildings thereon for the exclusive use of a private corporation for private gain and profit.
“Every new business, manufacturing plant, or industrial plant which may be established in a municipality will be of some benefit to the municipality. A new super market, a new department store, a *85 new meat market, a steel mill, a crate manufacturing plant, a pulp mill, or other establishments which could be named without end, may be of material benefit to the growth, progress, development and prosperity of a municipality. But these considerations do not make the acquisition of land and the erection of buildings, for such purposes, a municipal purpose.
******
“Our organic law prohibits the expenditure of public money for a private purpose. It does not matter whether the money is derived by ad valorem taxes, by gift, or otherwise. It is public money and under our organic law public money cannot be appropriated for a private purpose or used for the purpose of acquiring property for the benefit of a private concern. It does not matter that such undertakings may be called or how worthwhile they may appear to be at the passing moment. The financing of private enterprises by means of public funds is entirely foreign to a proper concept of our constitutional system. Experience has shown that such encroachments will lead inevitably to the ultimate destruction of the private enterprise system.
“We have called particular attention to the fact that in the cases cited by the appellee there was a specific legislative determination that the purpose was a public, county, or municipal purpose, as the case happened to be, and that there was no such legislative determination in this case. By so doing, we do not mean to hold or imply that had there been such a legislative determination, the certificates of indebtedness would have been valid. There are certain limits beyond which the Legislature cannot go. It cannot authorize a municipality to spend public money or lend or donate, directly or indirectly, public property for a purpose which is not public. A legislative determination may be persuasive, but it is not conclusive.”
Similarly in the City of West Palm Beach v. State, supra, 113 So.2d at p. 377, the Supreme Court of Florida observed:
“ . . . The charter of the City of West Palm Beach unquestionably authorizes it to construct municipal projects and issue bonds for their payment, but that power has limitations in the charter and the State Constitution which may not be transgressed.”
In that case, the City of West Palm Beach, pursuant to the provisions of its charter, special act and general law sought to issue bonds to erect a civic center composed of an auditorium, restaurant, marina, stores, large swimming pool, grandstand, off street parking lot, recreation building, artificial beaches, private dressing rooms, food service and related facilities and a fuel station. The undertaking further called for a contract between the city and the Flagler Marine Center Corporation to lease and administer the civic center. In concluding that the proposed bond issue was in violation of the constitution the Supreme Court quoted extensively from the decree of the trial court, as follows:
“ ‘The procedure whereby public funds are used to aid or promote individuals or private corporations in private enterprise is a dangerous and undemocratic course, and may not be followed except where it is clear and unmistakable that such private enterprise is a necessary adjunct to some proper public function. In the case at bar, because of the close proximity of the marina project to the main business district of West Palm Beach, where numerous stores, hotels, restaurants and all sorts of shopping facilities are readily available it is highly doubtful that similar facilities at the site of the marina are a necessary adjunct thereto.
“ ‘Under the circumstances in this case, the plan now in question is an improper subsidy of private enterprise with public money, and cannot be sanctioned.’ ”
*86 The record does not demonstrate that the private enterprise aspects of the city’s lease are “a necessary adjunct to some proper public function”. See State v. Clay County Development Authority, supra; State v. County of Dade, supra.
It must, however, be observed that while the purpose of the lease, i. e., highrise construction and multi-family dwellings, places the municipality in a competitive position with private industry, it is not this feature that makes the transaction void. It should be recognized that whenever a city undertakes to operate a public hospital, a waterworks system, an electric plant, a parking system, a garbage or sewage collection system, the municipality is in reality engaged in competition with private business. The constitution does not prohibit a municipal corporation from owning or operating a system because it is in competition with private business. What the constitution does prohibit is a municipal undertaking in partnership with private enterprise where the object of such undertaking is a private gain and profit by a private individual or corporation — the use of the municipal power for primarily a private purpose.
Unquestionably a housing project will be of some benefit to a municipality, i. e., growth, progress, development and prosperity of a municipality; but these considerations do not make a lease of public lands to a private corporation for the construction of multi-unit dwellings a municipal purpose. State v. Town of North Miami, supra. In Adams v. Housing Authority of City of Daytona Beach, supra, the city acting pursuant to the provisions of general law undertook a redevelopment project for the purpose of clearing a “blighted” area and acquiring by purchase or eminent domain real estate in the area seeking to make it available for sale or lease to private enterprises. Up until the Adams case the court had not been presented with a situation where a housing authority attempted to acquire lands in a slum area in order to devote such lands to private, commercial and industrial enterprises. It is to be noted that the particular law applicable to the city in the Adams case specifically permitted acquisition of real property in blighted areas “for redevelopment by private enterprises”. In declaring such undertaking to be invalid the Supreme Court of Florida held:
“It is inconceivable that any one would seriously contend that the acquisition of real estate for the declared purposes set forth in the proposed Redevelopment Plan is for a public use or purpose. No one has ever heard of any corporation, association or individual going into any of the above mentioned businesses except for profit or gain. If the municipalities can be vested with any such power or authority, they can take over the entire field of private enterprise without limit so long as they can find a blighted area containing sufficient real estate.”
Cf. Grubstein v. Urban Renewal Agency of City of Tampa, supra.
Although concededly, many of the cited cases were concerned with the issuance of certain types of revenue bonds to support the project in dispute and also dealt with the exercise of the power of eminent domain to acquire property to be subsequently used for some private purpose, these factual differences do not minimize the significance of the principles set forth in those cases. As the Supreme Court pointed out in Bailey v. City of Tampa the essence of the constitutional prohibition was to restrict the activities and functions of municipalities “to that of government, and forbid their engaging directly or indirectly in commercial enterprises for profit”. It would seem to make little difference that the city is not presently required to expend any funds in connection with acquiring the subject property or that no bonds are contemplated or that the exercise of eminent *87 domain is not involved. If the property is municipal property it must have been acquired through the exercise of some municipal power in furtherance of some public purpose. ' If the property in question is no longer needed for any municipal or public purpose then it should be disposed of in a manner that is not incompatible with applicable constitutional proscriptions.
A long-term lease with a private individual or a private corporation for private gain or profit is not consistent with such purpose.
Nothing expressed herein is intended to suggest or infer any improper motive on the part of the city in leasing the subject land to private enterprise nor should any sinister connotation be drawn from the transaction because the city has sought to lease lands to private enterprise. The positive inference which is conveyed from the transaction is an effort on the part of the city to stimulate the growth, progress and development of the area in question. The city, however, has chosen a method which our constitution indicates cannot be lawfully utilized.
Further, we are not unmindful of government’s obligation to preserve and protect its natural resources and in particular its recreational areas. The record in this case, however, simply does not support appellant’s contentions regarding the applicability of these considerations. Moreover, this issue is seemingly rendered moot by reason of our disposition on' other grounds.
We therefore hold the lease invalid under the provisions of- Section 10, Article VII, Florida Constitution.
Reversed.
WALDEN, J., and WHITE, JOSEPH S., Associate Judge, concur.

. Intervenor has failed to include a copy of the subject lease in the record on appeal thereby imposing upon this court the burden of piecing together pertinent facts much like a jigsaw puzzle. Although the actual provisions of the lease are not necessary to the determination of the point of law involved in this appeal, inclusion in the record would have been helpful.