Mr. Ronald W. Thomas Executive Director Department of General Services Larson Building Tallahassee, Florida 32301
Dear Mr. Thomas:
This is in response to your request for an opinion on substantially the following questions:
 1. WHETHER THE COOPERATIVE USE OF COMMUNICATIONS FACILITIES BY THE STATE WITH PRIVATE CORPORATIONS ON A RECIPROCAL, NONPROFIT BASIS IS PERMISSIBLE?
 2. WHETHER THE DEPARTMENT OF GENERAL SERVICES MAY LEGALLY PURSUE JOINT VENTURES WITH PRIVATE INDUSTRY FOR THE PURPOSE OF CONSTRUCTION, OWNERSHIP AND SHARING THE USE OF TELECOMMUNICATIONS TRANSPORT FACILITIES?
QUESTION ONE
The Division of Communications of the Department of General Services has entered into discussions regarding a proposal for the state to enter into an agreement with a private company for the sharing or cooperative use of private and public microwave facilities. Under this arrangement the state, in exchange for permitting the private company to use certain available channels on the Florida Turnpike microwave system, would be permitted to use channels on the private microwave system. This agreement would be on a reciprocal, nonprofit basis. It is stated in a supplemental letter from the Division of Communications: "An example of [the proposed microwave sharing agreement] would be the sharing of radio channels on the Florida Department of Transportation turnpike microwave system from Wildwood to Miami in exchange for radio channels on a microwave system from Wildwood to Tallahassee owned by a private corporation. In the above arrangement (10) channels on the State owned microwave system would be provided for use by the private corporation in exchange for the use by the State of (10) channels on the microwave system owned by the private corporation." The Federal Communications Commission, according to your letter, encourages the cooperative use of microwave facilities since such use helps preserve the scarce frequency spectrum. Rules and regulations of the Federal Communications Commission allow the cooperative use of microwave communications facilities and systems. See, 47 C.F.R. s 94.17.
The Division of Communications has the general supervisory power and responsibility over all state communications facilities and systems. See generally, s 282.102, F.S. Subsection (2) of s 282.102 specifically provides that the division shall have the power and duty "[t]o coordinate the purchase, lease, and use of all communications services for state government, including communications services provided as part of any other total system to be used by the state or any of its agencies." (e.s.) The division's responsibilities include the powers to consolidate the communications systems and services of state agencies and to provide for their joint use by such agencies; to assure management responsibility for any consolidated system or service; to enter into agreements for the support and use of the communications services of state agencies and of political subdivisions of the state; to standardize policies and procedures for the use of such services; to purchase from or contract with suppliers and communications common carriers for communications facilities or services, including private line services; unless delegated to state agencies, to control and approve the purchase, lease, and use of all communications equipment and facilities, including communications services provided as part of any other total system to be used by the state or any of its agencies. See, subsections (4), (5), (6), (9), (11), and (15) of s 282.102, F.S. However, none of these statutory provisions relating to the powers, duties and responsibilities of the division expressly or appear to impliedly authorize the division to enter into a reciprocal sharing-of-channels agreement with private corporations as contemplated by your inquiry. Compare, s 282.105, F.S., which provides that the Division of Communications shall provide a means whereby private nonprofit corporations under contract with state agencies or political subdivisions of the state may use the state communications system. This statute authorizes only nonprofit corporations to use the state communications system. The rule of statutory construction expressio unius est exclusio alterius, the express mention of one thing in a statute implies the exclusion of other things not mentioned, would lead to the conclusion that private for profit corporations are excluded from being allowed to use the state communications system. See generally, Thayer v. State, 355 So.2d 815 (Fla. 1976) (where statute enumerates things on which it is to operate or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned); Dobbs v. Sea Isle Hotel,56 So.2d 341 (Fla. 1952); Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944).
There must exist some basis in the statute for the exercise of the authority to permit reciprocal use of the state communications system by a for profit corporation; and if there is any reasonable doubt as to the statutory existence of such authority the Division of Communications should not undertake to exercise it. State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628
(1 D.C.A. Fla., 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974). None of the statutory provisions relating to the Division of Communications and the use of the state communications system authorize the contemplated reciprocal use of communications facilities with private for profit corporations. I am therefore of the conclusion that, until legislatively amended, the cooperative use of communications facilities and systems by the state with private for profit corporations on a reciprocal, nonprofit basis is not authorized.
QUESTION TWO
Your second question concerns the state's involvement in joint ventures with private corporations for the purpose of constructing and sharing the use of telecommunications transport facilities and systems. An example you give in supplemental correspondence of such a venture would be the joint funding by the state and private industry for the construction of a fiber optic communications facility and system. The state would, by funding a percentage of the construction of the communications facility, own a percentage of the facility, and would be able to use that facility at the state's discretion. The division states that such an arrangement could reduce the cost of communications transport for the state, thereby reducing the cost of state government. You do not point to any statutory authorization for such proposed joint ventures with private corporations nor has my research revealed any such authorization.
Moreover, provisions of the State Constitution would appear to prohibit the proposed joint venture. Section 10, Art. VII, State Const., in pertinent part, provides: "Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person. . . ." (e.s.) This constitutional provision goes on to list certain exemptions from this prohibition. These exemptions include certain investments of public funds and public trust funds and the issuance of revenue bonds to finance or refinance the costs of capital projects for airports or port facilities and industrial or manufacturing plants. See, paragraphs (a) through (c) of s 10, Art. VII. Paragraph (d) of s 10 also allows a municipality, county, special district, or agency of any of them to become a joint owner, among other things, for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person.
None of these exemptions are applicable to the proposed joint venture and ownership you propose in regard to the construction and operation of communication facilities and systems. Therefore, s 10, Art. VII, State Const., would appear to prohibit this type of joint venture and ownership with a private corporation. As stated by the Florida Supreme Court in Dade County, Board of Public Instruction v. Michigan Mutual Liability Company,174 So.2d 3, 5-6 (Fla. 1965), in construing a similar provision under the 1885 Constitution: "Reading the whole section, it is patent that the design of it was to keep the State out of private business; to insulate State funds against loans to individual corporations or associations and to withhold the State's credit from entanglement in private enterprise." Cf., Williams v. Turrentine, 266 So.2d 81
(4 D.C.A. Fla., 1972) (municipality constitutionally prohibited from entering into partnership with private business for the construction of multi-family dwellings).
One of the underlying problems with regard to the state or its agencies becoming financially entangled with private enterprise is that public property is placed in jeopardy by the default of the private party. See, e.g., State v. Housing Authority of Polk County, 376 So.2d 1158 (Fla. 1979). Since this proposal expressly contemplates that the state would become the joint owner with a private corporation for the construction, ownership and use of communications facilities and systems and does not fall within one of the enumerated exemptions, such proposal would appear to be violative of the prohibition contained in s 10, Art. VII, State Const.
In summary, it is therefore my opinion that, unless and until legislatively amended, the Division of Communications is not authorized to permit the cooperative use of the communications facilities by a private for profit corporation on a reciprocal, nonprofit basis; additionally, the state or any of its agencies would appear to be constitutionally prohibited by s 10, Art. VII, State Const., from entering into a joint venture with a private corporation for the joint ownership, construction and operation of communications facilities and systems.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General