66 So.2d 209 (1953)
STATE et al.
v.
BOARD OF CONTROL.
Supreme Court of Florida, Special Division A.
July 10, 1953.
T.E. Duncan, Gainesville, for appellants.
Richard W. Ervin, Atty. Gen., and Frank J. Heintz, Asst. Atty. Gen., for appellee.
MATHEWS, Justice.
This is an appeal by the State from a final decree validating an issue of University of Florida Student Dormitory Revenue Certificates of 1953 in the sum of $1,000,000.
The Board of Control, under the authority of F.S. Chapter 243, F.S.A., adopted the resolution authorizing the certificates to finance the cost of construction of projects consisting of ten small dormitories. Under the terms of the resolution, the certificates are payable solely and exclusively from the net revenue and income to be derived from the projects.
The record shows that the Board of Control took all steps in strict conformity with F.S. Chapter 243, F.S.A. and the petition for validation fully and completely presented all the facts and proceedings for the Circuit Judge to enter a final decree, and the Circuit Judge had jurisdiction of the subject matter and all of the parties necessary for the entry of such decree.
It appears that the State Board of Education of Florida adopted a resolution approving the resolution adopted by the Board of Control, dated January 16, 1953, which is the basic resolution authorizing the certificates of indebtedness. The final decree, after reciting the various steps taken, contained the following:
"10. That the proceedings authorizing the issuance of said revenue certificates by the Board of Control and all proceedings to validate the same have been in strict compliance with all requirements of the Constitution, Statutes, and the Laws of the State of Florida pertaining thereto and that the petitioner is entitled to the relief prayed.
* * * * * *
"(d) That said revenue certificates, issued in conformity with the resolution of the petitioner will be obligations of the Board of Control, payable exclusively from the revenues and funds *210 specifically pledged and provided for that purpose by said resolution, and will not be obligations general, special, or otherwise of the State of Florida, nor debts nor bonds within the meaning of Section 6 of Article IX of the Constitution of the State of Florida, will not be enforceable against the State, nor payment thereof enforceable out of any funds of the petitioner other than the revenues and funds pledged for the benefit of the holders of such revenue certificates; and that neither said certificates nor the resolution of the petitioner pledge, assign, or encumber in any way appropriations made by the Legislature of the State of Florida or revenue derived from the investment of the proceeds of the sale or from the rental of such lands as have been set aside by the legislative enactments of the United States for the use and benefit of any of the State educational institutions; that neither petitioner's said resolution nor the issuance of said certificates in the manner and for the purposes authorized by said resolution is a pledge or loan of the credit of the state to an individual, company, corporation, or association within the meaning of Section 10 of Article IX of the Constitution of the State of Florida, or other law of the State."
The State raised two assignments of error and propounded two questions. Question No. 1 is: Do the provisions of the Board of Control, University of Florida Student Dormitory Revenue Certificates of 1953 and the resolution authorizing the issuance thereof constitute a pledge or loan of the credit of the State to an individual, company, corporation, or association within the meaning of Section 10 of Article IX of the Constitution of the State of Florida, F.S.A., or other laws of the State?
Under question No. 1 the appellants contend:
(a) That the ultimate beneficiaries of financing will be the student living groups. The student living groups are defined as "duly enrolled students at the University of Florida, organized as a group, having a common interest in any university school or course of study or research," and
(b) The revenues which will be used to retire the certificates are to be paid to the Board of Control and secured by these purchase agreements with option to purchase under the terms of the agreement, and that title may ultimately vest in the student living group, should it exercise the right or option to purchase, and
(c) The student living groups will necessarily be private corporations, associations or organizations and are not in any sense public in their creation, purpose or character.
It is the contention of the appellants that although the certificates are issued in the name of the Board of Control, which is a public corporation of the State of Florida, the certificates will, in fact, be used to finance the cost of the construction of small dormitories, the title to which may eventually vest in a private corporation, association or organization in violation of Section 10 of Article IX of the Constitution of Florida.
The fallacy of this argument is the contention that the student living groups will necessarily be private corporations, associations or organizations, or that the financing and erection of such dormitories will serve the interest or purpose of such private corporation, association or organization, or the members thereof.
It is impossible to conceive of a public improvement which will not incidentally benefit some private individual, association or corporation engaged in private enterprise for private gain. The location and construction of courthouses, schools, roads, bridges, colleges and the buildings essential to their operation, are predominantly and primarily for a public purpose and, yet, each of them may be of some benefit to a private individual, association or corporation, engaged in private business for private gain. The mere fact that some one engaged in private business for private gain will be benefited by every public improvement undertaken by the government or a governmental agency, should not and does not deprive such improvement of its public *211 character or detract from the fact that it primarily serves a public purpose. An incidental use or benefit which may be of some private benefit is not the proper test in determining whether or not the project is for a public purpose.
The University of Florida is a public institution. The Board of Control and the State Board of Education are public institutions. From the year 1878 in the case of State ex rel. Attorney General v. Knowles, 16 Fla. 577, this Court has consistently held that such an institution as the University of Florida is a public institution, owned and operated by the State for public purposes and not for private purposes, as contemplated by Section 10 of Article IX of the State Constitution.
It is true that the operation of the University of Florida will serve the purpose of the private individuals who may attend its courses in attaining a higher education but the benefit to the private individual is incidental to the public purpose of producing an intelligent and educated citizenship. The expenditure of hundreds of millions of dollars in erecting school buildings throughout the state may be a great benefit to the private pupils who attend the free public schools, or to the owners of private property in the vicinity of such schools, but the real purpose and intent is to serve a public purpose.
Article 12 of the State Constitution proclaims in no uncertain terms that the maintenance of a uniform system of free public schools is for a public purpose, and further provides in Section 14 of Article 12 for the establishment, maintenance and management of normal schools. Section 3 of Article 12 creates the State Board of Education of Florida and provides for regulation and supervision of higher grades of education as the law shall provide.
The Act creating the Board of Control and under which the University of Florida was organized was sustained in the case of State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929, 959. In that case this Court held that the Board of Control was a public agency created in aid of the public purpose. The Court said:
"* * * It is but a part of a general system for the regulation, government and management of `schools of higher grades' authorized by section 3, art. 12, and section 1, art. 13, of the Constitution. * * *"
Classrooms, assembly halls, libraries, chemistry and scientific laboratories and dormitories constitute a part of the physical properties necessary for a university to perform its public functions and duties. When an institution such as the University of Florida accepts students from all parts of the State, it is as much of a duty of the Board of Control or the University to make available dormitories, meeting places and eating places, as it is to make available classrooms and laboratories.
It may be true that the revenues derived from the dormitories constitute public funds and being public funds could not be "pledged or loaned to any individual, company, corporation or association." If the real and dominant purpose of the projects was the promotion of a private enterprise for private gain, the contention of the appellants would be sound.
The State places great reliance upon the case of State v. Town of North Miami, Fla., 59 So.2d 779, as sustaining its contention. That case has no bearing whatsoever upon the questions involved in this discussion. In State v. Town of North Miami, supra, the financing was for a private enterprise with public funds. Property was to be acquired and a building erected solely for the purpose of being used to process and manufacture aluminum products for private gain by a private corporation. The whole scheme was to induce the private corporation to be operated for private profit and gain to locate in the municipality so that employment could be provided for the residents of the municipality and a payroll established. In that case the primary purpose was to buy the land and erect the building for a private corporation to carry on a private business for private gain and the public benefit of supplying work for the residents and a payroll was merely incidental to the main purpose.
*212 In the case at bar the main purpose and incidental purpose are in reverse. The predominant, primary and essential purpose is to provide the students at the University of Florida decent dormitories or other facilities, which is essentially a public purpose. The fact that the individual students may receive a private benefit by having a decent place to sleep, meet or eat is only incidental to the main purpose, and, even being incidental, the health, comfort and general welfare of the students attending the University is essentially in the public interest and carries out the whole purpose of the University to perform a service of public necessity and convenience.
The State claims, however, that these dormitories may eventually be owned by the corporation or association of which the students are members, and thereby the public purpose would be defeated. There is no merit in this contention. It is true that the title could eventually become vested in the corporation or association of which the enrolled students are members. Section 3.04 (E) of the resolution authorizing the certificates, contains the following:
"The form of all such lease agreements shall be approved by the original purchasers of said Revenue Certificates before the execution thereof by the Board, and shall further provide that any deed or other document which shall convey title to said dormitories or other facilities of said Project pursuant to said lease agreements shall contain appropriate restrictions so as to require said dormitories or other facilities of said Project to be continuously used for housing facilities at the University and subject to the jurisdiction and supervision of the University under its reasonable rules and regulations pertaining to traffic, sanitation and police regulations, University rules for the conduct of student personnel and University employees, and regulations for University student organizations."
The form of the lease with option to purchase, approved by the federal agency which has agreed to purchase the certificates, provides as follows:
"* * * said building shall be used solely and exclusively as a University of Florida approved housing facility; "* * * said property shall at all times be considered a part of the campus of the University of Florida, so long as it may be used for sorority or fraternity purposes, or other University activity; and said property, as well as all persons occupying the same and all persons entering or remaining thereon, shall be subject to reasonable University of Florida rules pertaining to traffic, sanitation, and police regulations, University rules for the conduct of student personnel and University employees, and regulations of University student organizations; * * * "If, * * * lessee-purchaser should desire to sell said property, it shall first be offered to Owner [Board of Control] * * * at its then appraised value; * * *."
It is, therefore, apparent that even though the lessee of one of these dormitories may obtain legal title to the same, the title is restricted and places the said property under the control of the University of Florida and clearly shows that such title would be held for the uses and benefits and subject to the restrictions of the University. Such a plan relieves the University, to some extent, of the burden of providing living quarters for some of the students and does require the expenditure of less money by the University itself to construct additional housing facilities with other funds. In other words, there will be acquired, for the use and benefit of students attending the University, dormitory and other housing facilities without any cost whatsoever to the University or the Board of Control, but such facilities will be under the supervision and the control of the University and considered a part of the campus of the University of Florida.
The statute under which these proceedings were brought, that is, F.S. Chapter 243, F.S.A., has been construed and held to be not violative of the constitutional provision in question in the case of Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677, 684. *213 It is clear that the University of Florida student dormitory revenue certificates of 1953 and the resolution authorizing the issuance of same do not violate Section 10 of Article IX of the Constitution of the State of Florida.
Question No. 2 is: Do the said Board of Control, University of Florida Student Dormitory Revenue Certificates of 1953 constitute obligations general, special, or otherwise of the State of Florida, or debts or bonds within the meaning of Section 6 of Article IX of the Constitution of the State of Florida so as to require approval of the issuance thereof at a freeholders election in the manner provided in the Constitution of the State of Florida?
We have heretofore held that the revenue certificates and the resolution authorizing the same are in strict conformity with the provisions of F.S. Chapter 243, F.S.A., which is the authority under which such certificates may be issued. Under the terms of the Act the Board of Control is definitely and expressly limited to the issuance of revenue obligations secured by and payable solely from the revenue of the project which is constructed from the proceeds of the obligations. The Board of Control is given no power or authority, expressly or impliedly, to issue any obligation to bind the State except as provided in the Act. It is prohibited from incurring obligations to be paid from any tax monies of the State or from any appropriations made by the Legislature.
In the case of Hopkins v. Baldwin, supra, in construing F.S. Chapter 243, F.S.A. and a similar resolution of the Board of Control, with reference to the question involved here, this Court said:
"The remedies made available under section 7 of the act do not render the statute invalid, because such remedies are applicable only to the particular funds that are represented by the pledged fees, rentals, and other charges contemplated to be derived from the specified outside sources, as charges for the use of the new facilities, and not from appropriations of money made by the state, or raised pursuant to law under its authority.
* * * * * *
"Upon the considerations aforesaid, and upon the authority of Board of County Commissioners of Pinellas County v. Herrick [Fla., 167 So. 386], supra, and the several authorities therein cited, we hold that neither chapter 16981, Acts 1935, supra [F.S.A. § 240.15 et seq.], nor the resolution adopted by the state board of control, as hereinbefore quoted and referred to, will result in the creation of any illegal bonded or other debt of the state of Florida in violation of amended section 6 of article 9 of the State Constitution, and that therefore the chancellor below committed no error in denying the injunction prayed for in appellant's bill of complaint."
Every one is put upon notice that, under the provisions of F.S. Chapter 243, F.S.A., the resolution adopted by the Board of Control in this case, the validation proceedings and the final decree of the Circuit Court of Alachua County, and in the opinion of this Court, the issuance and sale of the certificates in question will not result in the creation of any illegal bonded, or other, indebtedness of the State of Florida, in violation of amended Section 6 of Article IX of the State Constitution, and that the only source of revenue pledged for the payment of such certificates is the net revenue derived from the project in question.
The final decree appealed from should be and is hereby affirmed.
ROBERTS, C.J., and THOMAS and DREW, JJ., concur.