178 So.2d 573 (1965)
STATE of Florida, Appellant,
v.
WASHINGTON COUNTY DEVELOPMENT AUTHORITY, Appellee.
No. 33944.
Supreme Court of Florida.
September 15, 1965.
J. Frank Adams, State Atty., Earl Faircloth, Atty. Gen., Sam Spector, Asst. Atty. Gen., for appellant.
William J. Mongoven, Chipley, for appellee.
THOMAS, Justice.
The ninth day of June 1964 Washington County Development Authority, organized under Chapter 61-2988, Special Acts of 1961, adopted a resolution to borrow the sum of $244 thousand from the United States of America, acting through Farmers' Home Administration, and in evidence of the debt to execute an "installment" promissory note for that amount.
According to the terms of the note the interest on unpaid principal was to be 3.046 (three and forty-six thousandths) per cent. per annum. The principal was to be retired in annual installments of $15,391.78 payable on "or at the option of the [governmental] Authority before," 1 January 1970 and the same day of succeeding years, except that all the indebtedness was to be discharged within 30 years.
The indebtedness was incurred, to quote from the copy of the note embedded in the resolution, "to aid in financing a Rural Development Project designated * * * Falling Waters Homesites." By the resolution the Authority was obligated to proceed at once to build rural "homesites" which upon completion were to be sold at appraised market value as determined by the Administration to purchasers approved by the government. Although details of payments *574 by purchasers were not specified, it was stipulated that the loans should be amortized over a period of not more than 30 years with interest of five per cent. per annum.
The resolution contained many provisions for supervision of the accounts, for obtaining title insurance for securing the government against loss in event of default, on the part of any purchaser. It was provided, too, that the note should be "payable solely from the income and revenues of the Authority from said project."
There appears no reason to itemize the provisions with reference to receipt and disbursal of funds because what we have written should bring to the reader the picture of the transaction which we think may be accurately described as a real estate development project. We think it is not so much a question of whether it should be approved in the manner described in the record as whether legally it can be done at all.
Doubtless any real estate development in a community will benefit, at least vicariously, the economy of the community but the real problem is whether or not the community itself can go into the business to get a benefit which it would obliquely receive if the project were that of private enterprise.
Laudable as is the effort of the people to lift their locality to a more prosperous condition by their own bootstraps, so to speak, we do not think it can be done within the framework of our laws. Sec. 10, Art. IX, seems completely to bar the way.
It is said in appellee's brief that "even though the housing to be provided in the project is ultimately to go to private persons, the entire public of Washington County would be beneficially affected." This may be true as we have already indicated. But we cannot accept appellee's argument that inasmuch as the funds are to be obtained from the United States Government, through the Farmers' Home Administration, Sec. 10 of Art. IX does not apply under the theory that there is, therefore, no individual, company, corporation or association to whom the State "or in this instance Washington County Development Authority is lending or pledging its credit." The very next sentence in the brief seems to refute the thought for it is asserted that the money to be procured and secured is to be used for a public purpose, namely "the furnishing of rural housing to the citizens and residents * * * and to such other persons [as] * * * may be in need of housing in Washington County, Florida." It occurs to us that this is a contradiction for we are unable to construe the construction of homes for citizens, residents and other persons, in the circumstances reflected in this record, to be a public purpose.
It is obvious that the proposed development is not related to public health, public safety, public morals or public welfare, but only to the convenience of a fragment of the public.
We have, on occasion, approved the issuance of bonds where the proceeds were to be used in the purchase of property generally to be devoted to public use although a part of it would be employed in private enterprise but our approval was forthcoming because the part to be privately employed was but incidental to the main purpose, for example, State ex rel. Ervin v. Cotney, 104 So.2d 346 (Fla. 1958), and cases there cited. But we have not gone so far as we are asked to go in this case, and we are not disposed to do so.
It seems to us the present situation is the converse of the ones in which we have shown considerable liberality. Here the prime benefit would be to persons securing homes while the secondary and incidental advantage would redound to the public.
We regret that we cannot for reasons of Constitutional restriction approve what appears to be an earnest effort to improve the lot of the citizens of Washington County.
*575 The decree validating and confirming the "promissory note * * * and all proceedings incident" to its issuance is reversed.
ROBERTS, DREW, O'CONNELL and CALDWELL, JJ., concur.
THORNAL, C.J., and ERVIN, J., dissent with opinions.
THORNAL, Chief Justice (dissenting).
I dissent specifically for the reasons stated by my opinion in State v. Clay County Development Authority, Fla., 140 So.2d 576, and in general for the additional reasons announced by Justice Ervin in his dissent here.
ERVIN, Justice (dissenting).
The State of Florida, Appellant, appeals from a final decree of the Circuit Court of Washington County validating the issuance of a $244,000 certificate of indebtedness (promissory note) by the Washington County Development Authority, Appellee.
This certificate of indebtedness is to be issued to finance the cost of acquisition of land and for the construction thereon of roads and homes, said homes to be made available for lease and sale to rural residents of Washington County, Florida, in accordance with an overall rural renewal plan for the development, expansion and promotion of industries, commerce, recreation, agriculture and related purposes in said County as reflected in a resolution adopted on June 9, 1964, by the Appellee. Further details of the plan are set out hereinafter by quoting from the final decree.
The Washington County Development Authority was created by Chapter 61-2988, Laws of Florida, Special Acts of 1961. The Act authorizes the Authority to issue certificates of indebtedness for the purposes above stated.
Pursuant to said resolution, the said certificate of indebtedness in the amount of $244,000 was authorized by Appellee to be issued in favor of the United States Government, Farmers' Home Administration, Department of Agriculture, which certificate the latter may accept and make the loan pursuant to the provisions of Title I, Section 102 of the Food and Agriculture Act of 1962.
The project proposed to be undertaken by the Authority, the Appellee, pursuant to the financing arrangement outlined, is Rural Development Plan RDP-WC-1, Falling Waters Homesites, and is to be carried out in accordance with plans and specifications prepared by the Authority and approved by the Federal Government. The Court takes judicial notice that Falling Waters State Park is about three miles south of Chipley in Washington County, Florida. The loan covered by the certificate of indebtedness is to be paid off solely from the income and revenues of the Authority derived from the project.
The Circuit Court in its final decree found, inter alia:
"4. That the Washington County Development Authority has adopted an overall rural development plan for development of Washington County, Florida, and that it is necessary for the continued preservation of the health, welfare, convenience and safety of said County and its inhabitants that said overall development plan be accomplished and that as an incident thereto and an integral part of such overall plan that construction of rural housing should be accomplished and such housing be made available to rural citizens by lease or sale thereof, and it is essential that such improvement and project be accomplished as determined in that certain Resolution passed by Washington County Development Authority dated June 9, 1964, which Resolution authorizes the issuance of Certificate of Indebtedness *576 (Promissory Note) hereinafter more particularly described.
"5. Pursuant to and in accordance with the provisions of the Constitution and Laws of the State of Florida, particularly said Chapter 61-2988, Laws of Florida, Special Acts of 1961, petitioner, by said Resolution, authorized and for the issuance of a Certificate of Indebtedness (Promissory Note) in the amount of two Hundred Forty Four Thousand ($244,000.00) Dollars, to be dated June 9, 1964, with interest on the unpaid principal balance at the rate of three and forty-six thousandths per centum (3.046%) per annum, for the purpose of financing the costs of acquisition and improvement of project designated as RDP-WC-1-Falling Waters Homesites Project, all of which appears and is more fully set forth in the certified copy of Resolution heretofore filed herein.
"6. The estimated revenues to be derived from the operation of said RDP-WC-1-Falling Waters Homesites Project will be sufficient to pay the amount to become due in each fiscal year for the payment of the principal of an interest on the Certificate of Indebtedness (Promissory Note) herein referred to.
"7. Said Certificate of Indebtedness (Promissory Note) shall be payable as to both principal and interest solely from the net revenues derived from the operation of RDP-WC-1-Falling Waters Homesites Project. Said Certificate of Indebtedness (Promissory Note) will not constitute an indebtedness of the Washington County Development Authority, the County of Washington, or the State of Florida and no holder or holders of said Certificate of Indebtedness (Promissory) shall ever have the right to compel the exercise of the taxing power of the County of Washington or the State of Florida to pay said Certificate of Indebtedness (Promissory Note) or the interest thereon or to make any of the reserve, sinking fund or other payments provided for in said Resolution. Said Certificate of Indebtedness (Promissory Note) and mortgage given to secure said promissory note shall constitute a lien only upon the land acquired under said project and the revenues derived from the operation of said RDP-WC-1-Falling Waters Homesites Project, in the manner provided and referred to in said Resolution.
"8. The Washington County Development Authority pursuant to the Constitution and Laws of the State of Florida, has the power and is authorized to pledge the net revenues of RDP-WC-1-Falling Waters Homesites Project in the manner provided for the payment of the principal of and interest on the Certificate of Indebtedness (Promissory Note). Said pledge is legal and valid in all respects and does not violate any provisions of the Constitution and Statutes of the State of Florida.
"9. The Certificate of Indebtedness (Promissory Note) is not a bond within the meaning of Section 6, Article 9 of the Constitution of Florida and is not required by the Constitution and Statutes to be approved at an election by the qualified electors who are freeholders residing in Washington County, Florida.
* * * * * *
"16. Chapter 61-2988, Laws of Florida, Special Acts of 1961, created the Washington County Development Authority for the purpose of performing such acts as would be necessary for the sound planning for and the development of Washington County, Florida, giving to said Authority power to do all things necessary for the public good and welfare of the County. Washington County is essentially a rural community, timber, general farming and livestock are the principal means of livelihood in the County. The County has no substantial amount of tourism, no substantial industries and no recreational facilities. Because of conditions as they exist, the *577 labor which is located in Washington County is unskilled and there are no means by which these persons may be trained to become skilled craftsmen. As a result of such conditions, there is a trend among the young of the County and older persons of the County to move to other areas where conditions are an improvement over Washington County's conditions. The Development Authority, as shown by the evidence, has adopted an overall Rural Development Program which is very extensive and comprehensive and involves various projects which, when completed will have stimulated the economy to a great extent and will involve sums of money in excess of Five Million ($5,000,000.00) Dollars for the carrying out of said projects. The overall plan of the Development Authority indicates that it was their finding that recreational development was the major area in which progress could be made and that in order to carry out this development as an incident thereto, rural housing needs should be provided for. Under the extensive and comprehensive program of the Development Authority, it was determined rural housing was an absolute necessity. The proceeds from the loan herein called Certificate of Indebtedness (Promissory Note) and sought to be herein validated are to be used to finance a minor portion of the overall program of the Authority. The projects envisioned to be financed by this loan are only a small portion thereof being approximately 5% of the overall amounts of money to be expended in carrying out the overall program of the Authority. The acquisition of land, construction of homes and the sale and leasing of such homes is an integral part of the overall program and is only a small part thereof. The overall program of the Authority cannot be carried out without the portion of the program herein involved. The testimony and evidence submitted before this Court indicates that the needs of the County are such that unless programs such as contemplated by the Authority herein are carried out, the future of the County is so uncertain that the situation will soon become hopeless. There is adequate testimony in the Record to show that all possibility of having progress made along the lines contemplated by the Development Authority have been exhausted and that there are no private sources of capital and no lands available to carry through projects such as contemplated. The evidence submitted before this Court shows that unless such projects as contemplated herein are undertaken by the Authority, the general welfare of the County can only suffer. Direct and indirect benefits to be derived by the entire populace of the County would be the creation of immediate jobs, encourage, private businesses to intensify their efforts to renew the economy of the area and offer further inducement to outside business interests seeking building locations in areas of abundant labor supply and assure such businesses that adequate housing would be provided for potential employees. This Court is of the opinion that the entire overall project is well within the powers as given to the Authority under Chapter 61-2988, Laws of Florida, Special Acts of 1961, and that the project undertaken herein should be allowed to go forward, * * *."
The State of Florida, Appellant, seeking reversal of the final decree of validation, poses this question:
"Whether Washington County Development Authority's proposed project involving the acquisition of land, incurring costs for development thereof into homesites, building of roads, and constructing homes to be sold to private citizens is in violation of Section 10, Article IX of the Constitution of Florida?"
Appellant contends that this question should be answered in the affirmative.
*578 Section 10, Article IX of the Florida Constitution, F.S.A., prohibits the pledging or lending of the credit of the State or any political subdivision, unit or agency thereof to any individual, company, corporation or association.
Appellant contends this Section prohibits the Washington County Development Authority, the Appellee, from proceeding to finance the rural housing project in the manner hereinbefore outlined by the issuance of the $244,000 certificate of indebtedness, citing State v. Clay County Development Authority, 140 So.2d 576 (Fla.).
In the Clay County case it is said:
"* * * it is crystal clear that the primary purpose to be served by the issuance of these obligations is the financing of a private enterprise contrary to the express provisions of Section 10 of Article IX of the Constitution of this State, F.S.A. The public obligation is to be incurred for the sole purpose of building and equipping this industrial plant. * * * The dominant and paramount purpose is to lend the credit of the county to a private corporation to finance a private enterprise for private profit * * *."
It is my view that the case before us on appeal is not controlled by the Clay County case and the final decree validating the certificate of indebtedness should be affirmed. Section 10 of Article IX of the State Constitution does not prohibit the public loan contemplated in this case. This constitutional provision has been held in earlier cases to be inapplicable to situations similar to the kind involved in the instant project and the plan for its financing. See Sunny Isles Fishing Pier v. Dade County, 79 So.2d 667 (Fla. 1955); Panama City v. State, 93 So.2d 608 (Fla. 1957); State v. City of Miami, 72 So.2d 655 (Fla. 1954); Herr v. City of St. Petersburg, 114 So.2d 171 (Fla. 1959); Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953); State v. Board of Control, 66 So.2d 209 (Fla. 1953); State v. Dade County, 62 So.2d 404 (Fla. 1953); State v. Inter-American Center Authority, 84 So.2d 9 (Fla. 1955); State v. Daytona Beach Racing and Recreational District, 89 So.2d 34 (Fla. 1956); State v. Okaloosa County Airport etc., 168 So.2d 745 (Fla. 1964); State v. City of Tampa, 146 So.2d 100 (Fla. 1962); 83 A.L.R.2d 643, and State ex rel. Ervin v. Cotney, 104 So.2d 346 (Fla. 1958).
The Circuit Judge found the Authority
"* * * has adopted an overall Rural Development Program which * * * involves various projects which, when completed will * * * involve sums of money in excess of $5,000,000.00 dollars for carrying out said projects. The overall plan of the Development Authority indicates that it was their finding that recreational development was the major area in which progress could be made and that in order to carry out this development as an incident thereto, rural housing needs should be provided for. The proceeds from the loan * * * are to be used to finance a minor portion of the overall program of the Authority. The projects envisioned to be financed by this loan are only a small portion * * being approximately 5% of the overall amounts of money to be expended in carrying out the overall program of the Authority."
The incidental private benefit contemplated to arise from the proposed rural housing, albeit minor in degree, is quite unlike the situation in the Clay County case where the lending or pledging of public credit for financing and constructing an industrial plant was the primary or major objective. See State ex rel. Ervin v. Cotney, Panama City v. State, State v. Daytona Beach Racing and Recreational District, *579 and State v. Okaloosa County Airport etc., supra.
It is noted also that the Chancellor found the proposed rural housing absolutely essential to the overall County economic development project and an integral and necessary part thereof.
Incidental private housing as a minor part of a public project has met our approval in Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145, and in Grubstein v. Urban Renewal Agency of the City of Tampa, Fla., 115 So.2d 745, where housing construction for private use was found incidentally necessary to slum clearance and urban renewal programs.
We have no factual information to contradict the finding of the Chancellor that rural housing is a necessary incident to the successful program of economic and recreational rehabilitation of Washington County, of which the Chancellor found this community so direly in need.
In State v. Board of Control, supra, the issuance of revenue certificates was approved for the purpose of building houses to be leased to college social fraternities. The Court in discussing this point said:
"The mere fact that some one engaged in private business for private gain will be benefited by every public improvement undertaken by the government or a governmental agency, shall not and does not deprive such improvement of its public character or detract from the fact that it primarily serves a public purpose. An incidental use or benefit which may be of some private benefit is not the proper test in determining whether or not the project is for a public purpose."
This Court has announced that the nature of a public purpose is not static and that "* * * [e]ach generation may determine its concept of these things." State v. City of Tallahassee, 142 Fla. 476, 195 So. 402 (1940). See also State v. City of Jacksonville, 50 So.2d 532 (Fla. 1951).
The rationale of the cases cited above, including the Clay County case, is that a strict construction of Section 10 of Article IX of the State Constitution will not be adopted to defeat the financing of projects or programs which primarily serve a public purpose even though there is incidentially involved some private benefit or gain. This legal principle applied in said cases is a common sense practical one because it is impossible or unrealistic in many situations to separate the incidental private benefit from the public purpose. This principle is not the outgrowth of any particular political philosophy or prejudice arising from liberal or conservative theories of government. It is a balancing rule of law of our Court, often applied to meet the practical exigencies of public needs and problems which have arisen in the passage of time.
To deny Washington County the benefit of this rule of law so often and realistically applied by this Court requires that we magnify the proposed incidental private rural housing to the proportion of the primary objective, in direct contradiction of the evidence and the finding of the Chancellor that the proposed housing is only a minor incidental part of the overall public plan. It follows the microcosm, the minor feature of rural housing, is by construction of the majority of the Court advanced to become the macrocosm, greater than the community renewal project. In substance, this holding will be tantamount to receding from the rule of law firmly established in our state and the substitution of a new principle which will discourage new public programs for community economic rehabilitation, renewal and development. It directly conflicts with the slum clearance and urban renewal decisions of this Court.
Where rural housing is an incidental but necessary part of an overall public purpose it should not be stricken under the present *580 rule as violative of Section 10, Article IX, referred to in Cotney and the other cases cited  that is unless we expressly recede from the rule and hold incidental private housing per se is beyond the pale permitted by the Constitution. The slum clearance and urban renewal decisions heretofore rendered make it altogether logically inconsistent from the standpoint of stare decisis without express recession, for us to strike the proposed rural housing project in this case when it is incidentally but integrally necessary to the primary public development program of Washington County.
The development and promotion of our economic and recreational potentials have long been recognized as public purposes in our state. The Florida Development Commission and its predecessor, the Florida Improvement Commission, have spent millions of dollars of state funds to promote tourism and our industrial possibilities to aid private interests and promote private gain. Examples of public programs and expenditures, concessions and exemptions aiding private interests and to provide private benefits are legion in our state. Usually the private benefit is indirect and incidental, but there are many cases in which private benefit has been direct.
This Court judicially knows that economic blight has stunted and depressed several areas of this state in the past and public assistance was direly needed. True, assistance more often than not came from the Federal Government. The plight of Key West in the early thirties is called to mind. That city reached such a state of economic depression that its officials announced they were ready to give up the struggle, declare the city bankrupt and surrender their municipal charter to the state. Actually, these officials turned to the Federal Government to bail the city out of its economic straits. See Federal Writers Project, Florida. Florida, a guide to the southernmost state, p. 199.
The Court judicially knows that a few of the poorer smaller populated counties are in a state of economic decline. If the Legislature in its wisdom believes an Authority such as the Appellee should be constituted to take whatever steps appear advisable to reverse this decline, every reasonable doubt as to the Authority's efforts in this direction should be resolved in its favor. In this instance I see little reason for refusing to validate the certificate of indebtedness. It may be an unwise venture, it may even be of doubtful aid in the overall effort, but we should not in view of our former decisions deny the findings of the Chancellor or substitute a different finding for his, based upon our preconceived economic and philosophic conceptions.
We note the Chancellor has found that incidental rural housing is absolutely essential to the paramount objective, the public overall rural renewal plan being undertaken for the economic rehabilitation of the County. This housing is to consist of some 23 rural dwellings, roadways for same and utilities, and is expected to encourage people to remain in the rural area, particularly in the vicinity of Falling Waters State Park, so they can live there, work the lands and provide services to people coming into the area for recreation.
The evidence in the validation hearing below discloses private housing financing is unavailable; that rural housing is incidentally necessary to aid in the promotion and stimulation of the economic, recreational and agricultural potentials of the County. There is testimony that the population in the rural areas of the County is decreasing; that one third of the farms need rehabilitation; small farms have been abandoned and sold into larger ownerships for timber raising and pasturage; that of some 3,700 homes in the County, 1,600 are dilapidated and substandard and some 1,100 of these 1,600 homes are in rural areas; that the timber lands are for the most part cut over and unproductive; there is little skilled labor; people are moving away from the *581 County in increasing numbers. In the deadening lakes areas of the County in 1946-47 the fishing and recreation therein used to provide people supplying services from $300 to $400 per week when water covered the area, but now that the water has receded earnings in these areas have been greatly reduced; only by taking water from the Econfina River and turning it into the deadening areas, which project is a part of the Authority plan, can the recreational potential of this former fishing and recreational area be realized. Testimony was given concerning the aid the Authority has provided in developing Falling Waters State Park (the park has a 50-foot waterfall) with the resultant benefit to the economy of the County.
The cases collated above  wherein golf courses, race tracks, fraternity houses, trade marts, concessions, fishing piers, marinas, garages and filling stations, airports, overhaul shops and urban renewal private housing have been approved as public projects in themselves or as incidental constituuents of public projects  all militate against the majority opinion. It is particularly difficult to perceive how urban private housing can be approved by this Court as a part of an urban renewal public project while in this case Washington County is denied approval of a rural housing project which is an incidental part of its county rural renewal plan. Inadequate, substandard housing is seriously detrimental to the economy and livability of a community. A first essential to its economic stability is that the families of the community be adequately housed. We should not shut our eyes to this necessary incidental and strike it out of the rural redevelopment program of the county as purely a private concern in the light of the showing of the inability of free enterprise to undertake provision of this housing as an integral part of the overall economic redevelopment public program of the rural areas of Washington County, which program has been found so highly essential to the public welfare of the county.
I would affirm the decree of validation.