QUESTIONS: 1. Would the bill require a constitutional amendment, given restrictions in s. 10, Art. VII, State Const., relative to lending credit to persons? 2. Would the provisions of the bill be considered a form of exemption, thus possibly requiring an amendment to s. 3, Art. VII, State Const.? 3. Are there any other constitutional questions which may arise as a result of the provisions of the bill, as set forth above? 4. Are there any restrictions on the use of state retirement funds which would prohibit their use for the purposes set forth?
SUMMARY: Proposed legislation which would defer ad valorem taxes for certain permanent Florida citizens pursuant to a system by which a local governmental body issues interest-bearing tax anticipation notes maturing more than 12 months after issuance and payable no later than 10 years after issuance, in the amount of the deferred taxes, would be in violation of both ss. 10 and 12 of Art. VII of the Florida Constitution. Additionally, serious equal protection considerations under s. 2, Art. I, and uniformity of taxation considerations under ss. 2 and 4, Art. VII, would be inherent in the proposed legislation. STATEMENT OF FACTS: You have requested my opinion on the constitutional aspects of proposed legislation which would allow deferred taxation to permanent Florida residents age 65 or over who are entitled to the homestead tax exemption. The concepts incorporated in the bill are: Applicants may defer property taxes on their home up to a dollar amount not to exceed 80 percent of the assessed value of the home; no deferral can be granted on any portion of the assessed value of the homestead in excess of $75,000; interest shall accrue at 10 percent per year; deferred taxes constitute a prior lien which attaches as of the date and in the same manner as other liens for taxes; local governmental bodies issue tax anticipation notes the total of which equals the full amount of taxes due to the governing body and reported as deferred by the tax collector, the notes being payable to the State Board of Administration (SBA); the notes are payable no later than 10 years from date of issuance and bear interest equivalent to the average interest rate earned by the SBA on retirement funds investment; the SBA pays to the tax collectors those amounts of moneys listed by the collectors as deferred, the funds being made available on loan from the retirement trust funds under its jurisdiction; when ownership or use of the tax-deferred property changes so as to disallow homestead exemption for property, deferral for the year in which the change occurs is lost and deferred taxes plus interest become due. AS TO QUESTION 1: Question 1 must be answered in the affirmative. Section 10, Art. VII, State Const., provides: Pledging credit. — Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing: (a) the investment of public trust funds; (b) the investment of other public funds in obligations of, or insured by, the United States or any of its instrumentalities; (c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property. (d) a municipality, county, special district, or agency of any of them, being a joint owner of, giving, or lending or using its taxing power or credit for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person. The pledge of credit involved herein is the issuance by the governmental body of tax anticipation notes to the State Board of Administration in the full amount of the taxes due but deferred. The predominant purpose served by the issuance of such tax anticipation notes is to relieve private citizens of their present duty to pay ad valorem taxes. Stated differently, the governmental body is simply loaning public funds to a private individual at 10 percent interest for the purpose of financing the latter's ad valorem tax payments. In Nohrr v. Brevard County Educational Facility Authority, 247 So.2d 304 (Fla. 1971), the Supreme Court made two observations directly pertinent to the validity of the proposed legislation. First, the court noted at 308 and 309: All other proposed public revenue bond projects not falling into the exempted class described in Section 10(c) of Article VII would, of course, have to run the gauntlet of prior case decisions to test whether the lending or use of public credit for any of them was contemplated. . . . Since the pledge of public credit contemplated by the proposed legislation is not within the exempt categories enumerated in s. 10, Art. VII, supra, its validity depends upon its compliance with the established case law standards. Such prior case decisions reflect the general rule that where the proceeds of a bond issue serve a predominantly public purpose though there may be an incidental private benefit, the bond issue is not constitutionally infirm as a pledge of public credit for private purposes. State v. Manatee County Port Authority, 193 So.2d 162 (Fla. 1967), and AGO 073-230. The rule is to the contrary, however, when the pledge of public credit is for a predominantly private purpose, with only incidental benefit to the public body. State v. Clay County Development Authority,140 So.2d 576 (Fla. 1962), State v. Washington County Development Authority, 178 So.2d 573 (Fla. 1965), O'Neill v. Burns,198 So.2d 1 (Fla. 1967), and AGO 073-230. Indeed, in the Washington County Development Authority case, the court held that a bond issue for the construction of rural housing to be amortized from the income and revenues derived from the housing project was a constitutionally infirm pledge of public credit for a private purpose, i.e., the construction of homes for individuals in Washington County. See also s. 15, Art. VII, State Const., where express constitutional authorization is provided for the pledge of public credit in the form of student loans. While the proposed legislation contemplates the use of tax anticipation notes rather than a bond issue, such as was involved in the above-referenced cases, such fact is a distinction without a difference. Cf. O'Neill v. Burns, supra, involving an appropriation of state moneys. Section 10, Art. VII, supra, forbids a governmental entity from giving, lending, or using its taxing power for a private purpose. Further, s. 12, Art. VII, clearly places tax anticipation notes within the same category as bonds; and cf. Hollywood, Inc. v. Broward County, 90 So.2d 47 (Fla. 1956), wherein the acquisition of land subject to a mortgage or on a deferred payment plan was in effect held to be a bond within s. 16, Art. IX, State Const. 1885, requiring electorate approval in a referendum election. The second passage from the Nohrr decision, supra, pertinent to the instant matter was the court's definition of the term "credit" as used in s. 10, Art. VII, supra. The court noted at 309 that such term: . . . implies the imposition of some new financial liability upon the State or a political subdivision which in effect results in the creation of a State or political subdivision debt for the benefit of private enterprises. Under the proposed legislation, the local governmental bodies issue up to 10-year tax anticipation notes payable to the State Board of Administration in return for which the local governing bodies acquire present funds equal in amount to the taxes of its citizens being deferred. The execution by the governmental body of such tax anticipation notes is clearly the imposition of a new financial liability upon a governmental entity which results in the creation of a debt solely for the benefit of certain private individuals and is therefore a pledge of credit within the Nohrr definition. See s. 12, Art. VII, State Const.; State v. County of Dade,234 So.2d 651 (Fla. 1970). Consequently, the Nohrr decision leads inescapably to the conclusion that the issuance of tax anticipation notes to allow certain of Florida's citizenry to defer their ad valorem tax payments constitutes an impermissible pledge of the public credit under s. 10, Art. VII, State Const. AS TO QUESTION 2: Question 2 would appear to require a negative answer. The term "exemption" generally connotes the freedom from all or part of the burden of enforced contributions to the expenses and maintenance of government imposed on the general class to which the exempted party belongs. See 15A Words and Phrases, Black's Law Dictionary (4th Ed.), and JAR Corporation v. Culbertson, 246 So.2d 144 (3 D.C.A. Fla., 1971), cert. den.249 So.2d 690 (Fla. 1971). The proposed legislation does not free one from bearing all or a part of the burden of taxation but merely postpones the date upon which one will be called to bear such burden. It is not, therefore, an exemption within the literal definition of the term so as to require express constitutional authorization for its enactment in s. 3, Art. VII, State Const. AS TO QUESTION 3: Question 3 must be answered in the affirmative. First, the proposed legislation is in patent violation of s. 12, Art. VII, of the Florida Constitution. This section provides: Local bonds. — Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate. The proposed legislation would issue tax anticipation notes maturing more than 12 months after issuance for a purpose unrelated to either the financing or refinancing of a voter-approved capital project or to the refunding of an outstanding bond issue at a lower net interest rate. Consequently, the tax anticipation notes contemplated by the proposed legislation would be barred by s. 12, Art. VII, State Const. Further, serious constitutional problems appear inherent in the application of the standards of ss. 2 and 4, Art. VII, and s.2, Art. I, of the Florida Constitution, to the proposed legislation. Section 2, Art. I, contains the basic constitutional guarantee of equal protection of law. Sections 2 and 4, Art. VII, mandate uniformity and equality in the application of Florida's ad valorem tax laws. Such mandates govern both the assessment and collection of ad valorem taxes. State v. O'Quinn, 154 So. 166
(Fla. 1934). While such provisions do not forbid classification for purposes of taxation, such classification must not be arbitrary, unreasonable, or unjustly discriminatory and must rest upon a reasonable distinction or difference having a fair and substantial relation to the object of the legislation. Just Valuation and Taxation League, Inc. v. Simpson, 209 So.2d 229
(Fla. 1968), Tyson v. Lanier, 156 So.2d 833 (Fla. 1963), and 31 Fla. Jur. Taxation s. 75, p. 121. Whether the classification in the collection of taxes contemplated by the proposed legislation passes constitutional muster under s. 2, Art. I, and ss. 2 and 4, Art. VII, however, is, in the final analysis, a question capable of judicial resolution only. See Shevin v. Kahn, 273 So.2d 72
(Fla. 1973), affirmed 416 U.S. 351, (1974) for the most recent treatment of an ad valorem tax classification. AS TO QUESTION 4: Question 4 must be answered in the negative as to the existence of any constitutional restrictions on the investment of state retirement funds. The present restrictions on the investment of such funds are, pursuant to s. 121.151, F. S., embodied in ss.215.44-215.53, F. S. Such statutory restrictions, however, principally delineated in s. 215.47, F. S., would not appear to authorize the utilization of retirement funds in the manner contemplated by the proposed legislation.